# EXHIBIT 7



**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

NMA:AL
F.#2010R00195

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

October 19, 2016

<u>By Hand and ECF</u>

The Honorable Dora L. Irizarry
Chief United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Michael Persico
              <u>Criminal Docket No. 10-147 (S-6) (DLI)</u>

Dear Chief Judge Irizarry:

      The government respectfully submits this letter in anticipation of sentencing in the above-captioned case. For the reasons set forth below, the government respectfully asks the Court to impose a term of imprisonment within the advisory Guidelines range of 37 to 46 months and a fine within the advisory Guidelines range of $7,500 to $75,000.

Relevant Background

      On June 8, 2012, the defendant pled guilty to the sole count of the above-captioned superseding information, which charged him with conspiring to participate in an extortionate extension of credit, in violation of 18 U.S.C. § 371. (Docket Entry No. 566.) On October 30, 2014, after briefing by the parties, the Honorable Sandra L. Townes denied the defendant's motion to withdraw his guilty plea. (Docket Entry No. 791.) Later that day, the parties appeared before the Court, and the Court ordered a <u>Fatico</u> hearing in order to hear proof regarding the defendant's history and characteristics. (Docket Entry dated Oct. 30, 2014.) On March 2, 2015, after additional briefing, Judge Townes again denied a motion by the defendant to withdraw his guilty plea. (Docket Entry No. 811.) On November 24, 2015, this case was reassigned to Your Honor. On June 3, 2016, the parties appeared before Your Honor to address objections to the Presentence Investigation Report, and on August 10 and 24, 2016, the Court conducted a <u>Fatico</u> hearing. On September 21, 2016, the parties filed post-hearing briefs (Docket Entry Nos. 846, 848-49), and on September 28, 2016, they filed responses (Docket Entry Nos. 853-54). On October 12, 2016, the defendant filed his sentencing memorandum. (Docket Entry No. 856.)

Discussion

The government respectfully submits that, in this case, a term of imprisonment within the Guidelines range of 37 to 46 months is appropriate in light of all relevant sentencing factors, and also respectfully requests that the sentence include a fine within the advisory Guidelines range of $7,500 to $75,000.

I.     Legal Standard

The Sentencing Guidelines are advisory, not mandatory. United States v. Booker, 125 S. Ct. 738, 764-65 (2005). However, the Supreme Court held in Booker that the sentencing court must consider the Guidelines in formulating an appropriate sentence. Id. In Gall v. United States, 552 U.S. 38 (2007), the Supreme Court set forth the procedure for sentencing courts to follow in light of Booker:

> [A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark.

Gall, 552 U.S. at 49 (citation omitted). Next, a district court should "consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party. In so doing, [the district court] may not presume that the Guidelines range is reasonable. [The district court] must make an individualized assessment based on the facts presented." Id. at 49-50 (citation and footnote omitted).

II.    The Guidelines Range of Imprisonment Is 37 to 46 Months

In the plea agreement, the government estimated that the advisory Guidelines range of imprisonment is 37 to 46 months. (Plea Agreement ¶ 2.) The defendant stipulated to this calculation (id.) and the Probation Department agrees with it (Revised Presentence Investigation Report dated July 29, 2016 ("PSR") ¶ 109).

2

III. A Sentence Within the Guidelines Range Is Appropriate

The defendant seeks a sentence of time served.[1] (Def.'s Stg. Mem. (Docket Entry No. 856) at 1.) However, the government respectfully submits that a sentence within the Guidelines range is appropriate in light of all relevant sentencing factors, and that a sentence below the Guidelines range would not serve the purposes of sentencing.

A. The Nature and Circumstance of the Offense

In 2009, the defendant provided $100,000 to co-defendant Anthony Preza, who in turn provided it to the operators of All Around Trucking (co-defendants James Bombino and Theodore Persico, Jr., as well as a third individual who was cooperating with the government). (PSR ¶ 37.) The $100,000 was a loansharking loan extended by the defendant, and it was conveyed through Preza because the defendant wanted to disguise his role in extending the loan. This is a serious crime committed under the auspices of a powerful, violent criminal enterprise. In particular, the defendant was able to make loansharking loans – and to expect to obtain repayment of those loans – because of his position as a powerful associate in the Colombo organized crime family of La Cosa Nostra (the "Colombo family" and "LCN," respectively). Although the defendant refers to this crime as "an aberrational occurrence" (Def.'s Stg. Mem. (Docket Entry No. 856) at 1), loansharking is in fact a crime that he committed over a long period of time, as discussed below. Loansharking is a staple LCN crime that allows the Colombo family and other LCN crime families to thrive, and that often results in violence or threats of violence. The defendant's participation in this crime supports a sentence within the Guidelines range.

B. The History and Characteristics of the Defendant

A sentence below the Guidelines range, such as the requested sentence of time served, would be inappropriate in light of the defendant's history and characteristics. In addition to the crime of conviction, the defendant's history includes participation in the following additional crimes, as proven at the Fatico hearing:

- Racketeering: The defendant is a long-time associate of the Colombo organized crime family. (Govt. Post-Hearing Br. dated Sept. 21, 2016 (Docket Entry No. 846) at 1-8.) In or around 1993, after some high-ranking members of the crime family were arrested, several associates who had previously reported to Theodore Persico, Jr., began reporting to the defendant. (Id. at 3.) In March of that year, the defendant was surveilled meeting with Colombo family member Joseph Monteleone, Sr. (Id. at 6.) Associates Anthony Russo

---

[1] The defendant was arraigned on March 9, 2010, on which date a permanent order of detention was issued. (Docket Entry No. 13.) Following additional litigation and an appeal, he was ordered released on May 18, 2010, subject to meeting certain conditions. (Docket Entry No. 108.) The Bureau of Prisons' public website indicates that he was released on May 19, 2010. He has therefore served approximately 72 days.

3

and Francis Guerra continued reporting to the defendant until his brother, Alphonse Persico, who at various times was a member, captain and acting boss within the crime family, was released from jail in 1994. (Id. at 3, 6.) Later in the 1990s, the defendant was involved in discussions about which associates would be inducted into the crime family. (Id. at 4.) In 1997, the defendant was surveilled meeting with Alphonse Persico and Anthony Russo. (Id. at 7.) In 2008, the defendant even gave advice to Anthony Russo about how to behave after induction. (Id. at 4-5.) In 2009 and 2010, the defendant helped Russo and Guerra – who had recently completed lengthy terms of federal imprisonment – start a car-detailing business by arranging for financial backing, providing physical space and helping arrange for them get business. (Id. at 4-6 & n.2.)

- The 1993 Murder of Joseph Scopo: The defendant participated in the 1993 murder of Joseph Scopo by ordering the murder and providing firearms for it. (Id. at 8-16.) At the time, the Colombo family was divided into two warring factions, one loyal to the defendant's father, Carmine Persico, who was the crime family's official boss, and the other loyal to acting boss Vic Orena, who was attempting to take over the crime family. (Id. at 8.) Scopo was a leader within the Orena faction. (Id.) In 1992 or 1993, Russo and Guerra apprised the defendant of their plan to murder Orena faction member William Cutolo. (Id. at 9.) The defendant then directed Russo to meet with Eric Curcio, who knew where Scopo was, and to murder Scopo. (Id.) Russo and Guerra asked the defendant for firearms to murder Scopo, and he provided them with firearms, including a Mac 10 with a silencer, through another Colombo family associate. (Id. at 9-10.) After an unsuccessful attempt by the murder crew to kill Scopo, the defendant told Russo to complete the murder before Alphonse Persico returned home from jail. (Id. at 10-11.) On October 20, 1993, the crew murdered Scopo using the Mac 10 provided by the defendant, along with another firearm.[2] (Id. at 11-15.)

---

[2] In the government's response to the defendant's post-Fatico hearing brief, the government wrote that an FBI report the defendant offered to the Court reflected the statements of an individual who had no personal knowledge of the facts of the Scopo murder, and who was never signed up as a cooperating witness. (Docket Entry No. 853 at 12 n.5.) In his sentencing memorandum, the defendant correctly identified the individual as Salvatore Miciotta, who was in fact sign up as a cooperating witness. The government apologizes for this error. However, the fact remains that Miciotta has no personal knowledge regarding how the Scopo murder was planned and carried out. More specifically, Miciotta was a member of the Orena faction, not the Persico faction, and therefore would not have been present when the defendant and others made plans to murder Scopo. (See Def.'s Stg. Mem (Docket Entry No. 856), Ex. 4 at 1813 (Miciotta testified that another individual "followed [Miciotta] to the Orena side"), 1815 (Miciotta testified that "[m]e and several members of the Orena faction" went somewhere together).)

4

- <u>Loansharking</u>: In addition to the crime of conviction, the defendant participated in loansharking by financing Russo's and Guerra's loansharking business from approximately 1993 to 1996 or 1997. (<u>Id.</u> at 16-19.) In particular, the defendant loaned about $150,000 to $200,000 to Russo and Guerra at a rate of one "point," or one percent interest per week, and they in turn extended loans to others at two-and-a-half to three points per week. (<u>Id.</u> at 16-17.) When Russo and Guerra had difficulty collecting money and repaying the defendant, he initially did not make demands, but subsequently told them they had to repay him. (<u>Id.</u> at 17.) Russo then assaulted a series of loansharking customers. (<u>Id.</u> at 17-19.) When Russo was arrested but released on bail in or around 2000, the defendant forgave Russo's debt, which at the time was approximately $60,000 or $70,000, because the defendant did not want Russo to inform about the defendant's participation in the Scopo murder. (<u>Id.</u> at 18.) The defendant also provided commissary money to Russo after Russo was sentenced. (<u>Id.</u> at 18-19.)

- <u>Extortion</u>: The defendant extorted Colombo family members Russo and Anthony Stropoli into not opening a valet parking business. (<u>Id.</u> at 19-20.) Russo and Stropoli wanted to open their business in New Jersey in 2009 or 2010. (<u>Id.</u> at 19.) When they met with Anthony Preza to seek his advice, the defendant joined the meeting, asked how they would like it if he opened a seafood business in competition with Stropoli, and told them to direct business to him and Preza in exchange for a fee. (<u>Id.</u>) Russo obtained valet business for the defendant and Preza from one restaurant, but he and Stropoli did not open their own business because they did not want "problems" from the defendant. (<u>Id.</u> at 19-20.)

- Conspiracy to Acquire and Sell Stolen Video Games: The defendant participated in a conspiracy to acquire and sell stolen video games. (<u>Id.</u> at 20-22.) Russo learned of the opportunity to acquire the stolen games, and the defendant referred him to an associate who could provide Russo with the $70,000 or $75,000 he would need. (<u>Id.</u> at 20.) Russo and Guerra met the associate, who gave them the money, but Russo called the scheme off after he believed (correctly) that agents were surveilling him while he attempted to acquire the games. (<u>Id.</u> at 20-21.) The defendant directed Russo to return the money to the associate who had provided it. (<u>Id.</u> at 21.)

Because of this history of committing serious crimes within the auspices of an organized crime family, a sentence below the Guidelines range would be inappropriate in this case.

The defendant supports his request for a time-served sentence in part by reference to the purported need for him to provide support to his daughters and mother. (Def.'s Stg. Mem. (Docket Entry No. 856) at 1, 12-20.) However – and although the loss of the daughters' mother to cancer is extremely sympathetic – the fact remains that his

5

daughters are now adults in their twenties. (Id. at 12, 15; PSR ¶ 87.) In addition, three of the defendant's siblings reside in Brooklyn and are available to take care of the defendant's mother, and it appears that he also has two children aged 32 and 31 who would be available for that purpose. (PSR ¶¶ 81, 85.) In light of these facts, the defendant's family circumstances are not sufficiently extraordinary to support a sentence below the Guidelines range and, in any event, were foreseeable to him while he committed the crimes described above.

The defendant also argues that a Guidelines sentence would create unwarranted sentencing disparities between him and his co-defendants. (Def.'s Stg. Mem. (Docket Entry No. 856) at 30-31.) However, with respect to co-defendant Anthony Preza, he is not similarly situated because the defendant's role in their crime of conviction was more significant than Preza's – as indicated by the role enhancement to which the defendant stipulated – and, perhaps more importantly, Preza does not share the defendant's lengthy history of committing serious crimes. As for co-defendant Guerra, to whom the defendant also refers, he was convicted of a very different crime (trafficking in prescription drugs and committing insurance fraud), which makes the comparison strained. In addition, even after Judge Townes reduced Guerra's sentence, it was to 135 months, which hardly supports the imposition of a below-Guidelines sentence in the present case.

C. Reflecting the Seriousness of the Offense, Promoting Respect for the Law and Providing Just Punishment

A sentence within the advisory Guidelines range is also necessary to reflect the seriousness of the offense, to promote respect for the law and to provide just punishment. 18 U.S.C. § 3553(a)(2)(A). As noted above, the offense of conviction is serious, and the defendant's additional crimes indicate that he lacks respect for the law. A sentence below the Guidelines range would not serve these purposes.

D. Affording Deterrence and Protecting the Public

A sentence within the advisory Guidelines range is necessary to afford adequate deterrence to criminal conduct and to protect the public from further crimes of the defendant. 18 U.S.C. § 3553(a)(2)(B) & (C). "Under section 3553(a)(2)(B), there are two major considerations: specific and general deterrence." United States v. Davis, 08 CR 332 (JBW), 2010 WL 1221709, at *2 (E.D.N.Y. March 29, 2010). Because the defendant has committed crimes over a long period of time, he is in need of specific deterrence. In addition, by imposing a sentence within the Guidelines range in this case, the Court can send a message to others in the defendant's position, or who are considering embarking on a life of crime, and can discourage them from doing so. Again, a sentence below the Guidelines range would not serve these purposes.

IV. A Fine Within the Guidelines Range Is Warranted

Section 5E1.2(a) of the Guidelines provides that "[t]he court shall impose a fine in all cases, except where the defendant establishes that he is unable to pay and is not

6

likely to become able to pay any fine." The defendant bears the burden of proving an inability to pay. <u>United States v. Tocco</u>, 135 F.3d 116, 133 (2d Cir. 1998). In this case the Probation Department found that the defendant has not satisfied that burden. (PSR ¶ 107.) Based on an adjusted offense level of 21, the Guideline fine range is $7,500 to $75,000. (<u>Id.</u> ¶ 117 (citing U.S.S.G. § 5E1.2(c)(3) & (c)(4).) It is appropriate that the defendant "reimburse society for the drain on economic resources" that he has caused, as well as for "the high costs of [his] own necessary imprisonment" should a term of imprisonment be imposed. <u>United States v. Sessa</u>, 821 F. Supp. 870, 875 (E.D.N.Y. 1993) (Weinstein, J.). The government therefore respectfully requests that the defendant be required to pay a fine within the Guidelines range.

## Conclusion

For the reasons set forth above, the government respectfully asks the Court to impose a term of imprisonment within the advisory Guidelines range of 37 to 46 months and a fine within the advisory Guidelines range of $7,500 to $75,000.

Respectfully submitted,

ROBERT L. CAPERS
United States Attorney

By:     /s/
Nicole M. Argentieri
Allon Lifshitz
Assistant U.S. Attorneys
(718) 254-6232/6164

cc: Clerk of the Court (DLI) (by ECF)
Defense Counsel (by ECF)
Mary Ann Betts, Supervisory U.S. Probation Officer (by email)