IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) Case No.: 92-cr-00351 (EK) |
| | ) |
| VICTOR J. ORENA | ) |
| | ) |

**VICTOR J. ORENA'S OBJECTIONS TO REVISED
PRE-SENTENCE INVESTIGATION REPORT**

Victor J. Orena, the Defendant in the above-styled case, by and through the undersigned counsel and pursuant to Rule 32(f) of the Federal Rules of Criminal Procedure, hereby files his objections to the revised pre-sentence investigation report, provided to the Defendant on May 24, 2023. All prior filings in this case are incorporated herein.

**Introduction and General Objection**

As the Court is aware and all parties have acknowledged, this case was remanded by the Second Circuit, based on a finding that Mr. Orena's firearm conviction must be vacated and is now before the Court for a *de novo* re-sentencing.[1]

---

[1] See e.g. Gov't Letter of April 30, 2021 at 1 [ECF# 1856] ("... the government has conceded that the firearm conviction cannot stand in light of the Supreme Court's decision in United States v. Davis, 139 S. Ct. 2319 (2019), requiring the Court to undertake a full de novo resentencing."); Gov't Letter of October 15, 2020 at 1, 7 [ECF# 1852] ("...Orena's

1

To that end, the Court has on two occasions ordered that an "updated PSR" be prepared and provided to the parties by May 22, 2023, in advance of the *de novo* resentencing.[2]

On May 24, 2023, the Probation Department emailed the undersigned and government counsel a document styled "Revised Presentence Investigation Report," indicating on the first page that the original PSR was prepared on April 1, 1993 and that it was revised on May 24, 2023. The "Revised" PSR is a 56 page document that, with the exception of a rare random insertion[3], is simply a copy of the original PSR, prepared over 30 years ago.

With all due respect to the Probation Department, in no meaningful way can this "Revised" PSR be deemed an "updated" PSR. Moreover, given the process and role intended for a Presentence Investigation Report under Rule 32 of the Federal Rules of Criminal Procedure, and the great significance this Court has

---

conviction on Count Eleven must be vacated and the Court should undertake a full resentencing of Orena." "Because Orena's Section 924(c) conviction is predicated on a crime of violence that qualifies only under the Residual Clause, Orena's conviction on this count must be vacated and the Court should undertake a full resentencing of Orena on the remaining counts. See Powers, 842 F.3d at 179.")

[2] See ECF# 1855 & Text Order of April 21, 2023 (ordering the "updated" PSR to be provided by May 22, 2023) .

[3] See e.g., Page 4, updating to show co-defendants recently re-sentenced to time served or a dramatically reduced sentence; ¶11 (reflecting that a Count is to be vacated; but citing the wrong Count); ¶¶222 & 224 (reflecting Mr. Orena's incarceration for 31 years, since 1992 and brief reference to his terminal medical conditions in summary form).

given to the PSR thus far in this case - e.g., in connection with Mr. Orena's motion for compassionate release under 18 U.S.C. §3582 - this is a very significant matter.

Additionally, the "Revised" PSR reflects a different indictment entirely from what the government has posited as the operative indictment in the case.[4] This, of course, makes it impossible to fully and accurately enter objections to the Revised PSR and its reference to the crimes of conviction before the Court and the sentence to be allocated to each.

Mr. Orena objects to the Revised Presentence Investigation Report in its entirety as violative of Rule 32 and this Court's Orders.

To give just some brief examples of the ways in which the Revised PSR fails to give an accurate picture of Mr. Orena as he stands before the Court for *de novo* resentencing today, consider the following:

A. On Page 2, the Court is advised that Mr. Orena is 58 years old. Mr. Orena will be 89 years old on August 4, 2023. Clearly his current age is a relevant sentencing

---

[4] Compare the 9 count indictment reflected and described on Pages 3 and 5-6 of the Revised PSR and the Probation Department's report to the Court that Count 8 is the Count to be vacated with the government's letter of October 15, 2020, following the remand from the Second Circuit, explaining that it was Count 11 that is to be vacated and attaching the 14 count S-4 indictment, which the government contends is the operative indictment. [ECF# 1852 & 1852-1]. The records from the time frame of the trial in this case are not accessible online through the Pacer system and the undersigned cannot discuss the matter or get any questions answered by Mr. Orena because of his dementia. The undersigned is relying on the government's October 15, 2020 letter as to what the actual operative indictment provides. The confusion surrounding this matter must be resolved before Mr. Orena can meaningfully enter all applicable objections.

factor. On the same page, his residence address from over 30 years ago is listed. Mr. Orena has been incarcerated continuously for over 30 years.

B. A PSR, of course, is intended, *inter alia*, to present the Court with an accurate picture of the defendant's financial condition and ability to pay a fine. This "Revised" PSR solely reflects Mr. Orena's purported financial condition over 30 years ago in ¶¶248-253. It also advises the Court that defense counsel requested that the Officer not discuss financial matters with Mr. Orena. That might have been the case over 30 years ago; for the "Revised" PSR, neither the undersigned nor Mr. Orena (according to his family) was contacted at all by the Probation Department for any input into the Report.

C. As this Court is aware, Mr. Orena suffers from overwhelming medical conditions, deemed terminal under all applicable regulations and guidelines. He is confined to a wheelchair, unable to self-care, and suffers from dementia, which, according to reports by medical and correctional staff which the undersigned previously provided to the Court, renders Mr. Orena unable to know or understand who he is or where he is. The "Revised" PSR includes one paragraph which, in summary fashion, minimizes the severity of his condition [¶224], and then goes on to provide his physical condition from other 30 years ago in 5 paragraphs [¶¶225-229]. Paragraph 222 makes passing reference to the BOP assessment of Mr.

Orena's current risk for dangerousness or recidivism as the lowest level (minimum) [See ECF# 1864-2]; but it too gives short shrift to his overwhelming mental and physical disabilities and omits all of the productive activities in which he engaged for both personal rehabilitation and to help others. See e.g., *Pepper v. United States*, 562 U.S. 476, 481 (2011) (courts consider rehabilitation since the original sentencing on resentencing). Evidence of this already has been provided to the Court and is incorporated herein.

D. Throughout the "Revised" PSR, reference is made to Mr. Orena's purported conduct beyond the conduct charged and for which he was convicted, attributed to information provided by the FBI or other unnamed "law enforcement" sources or "trial testimony" [See e.g. Pages 13-20]. Entirely absent from the "Revised" PSR is the abundant evidence of government misconduct which, several years after the original sentence was imposed, led Judge Weinstein to conclude that the government misconduct attending this case was "disturbing" and that on the law and facts a decision vacating the judgment of conviction and sentence "might be justified.⁵" The "Revised" PSR also omits all of the evidence of unprecedented government misconduct that was only uncovered after Judge Weinstein's decision, including a multiple count murder indictment for a lead FBI agent and much more,

---

⁵ *Orena v. United States*, 956 F. Supp. 1071, 1076 (E.D.N.Y. 1997) (Weinstein, J.).

a withheld report from a Top Echelon Confidential Informant advising the government that somehow else committed the murder for which Mr. Orena was convicted. [ECF# 1869-4; See also ECF# 1869 and exhibits - incorporated herein]. Clearly, all of this is relevant to providing the Court with a full, fair, and accurate picture of the circumstances to be considered under 18 U.S.C. 3553(a) as Mr. Orena now stands before this Court; but the "Revised" PSR on which this Court is to base its *de novo* resentencing omits it all entirely.

In short, going forward with Mr. Orena's *de novo* resentencing based on this "Revised" PSR which reflects facts from over 30 years ago, including purported "facts" that have been entirely undermined in the years since and that omits material facts directly relevant to sentencing violates the fundamental and long-recognized principles by courts in this District *see e.g., United States v. DeRiggi*, 893 F. Supp. 171, 174 (E.D.N.Y. 1995) (Weinstein, J.)[6] and as recently affirmed in very clear terms by the United States Supreme Court. *See Concepcion v. United States*, – U.S. –, 142 S. Ct. 2389, 213 L. Ed. 2d 731 (June 27, 2022).[7]

---

[6] "The sentencing court must consider the facts as it finds them at the time of resentence. Additional facts supplement those considered at the time of the first sentence." 893 F. Supp. 171 at 174.

[7] "When a defendant appears for sentencing, the sentencing court considers the defendant on that day, not on the date of his offense or the date of conviction." 142 S. Ct. at 2395; 213 L. Ed. 2d at 741. The Court in *Concepcion* makes clear throughout the decision that the same principles apply at a resentencing or sentencing modification proceeding in this regard.

Mr. Orena objects to the "Revised" PSR in its entirety for the foregoing reasons and because it violates the requirements set forth in Rule 32(c) & (d).[8] Rather than burdening the Court with a re-filing of all of the materials and information that Mr. Orena asserts must be included at least by detailed reference in an updated PSR and which must be considered by this Court at the *de novo* resentencing, he incorporated by reference herein, as if expressly set forth, all prior filings on this subject, including, but not limited to, the medical records and related filings made under seal and ECF## 1864, 1869, 1875, 1912 and all exhibits attached to the foregoing, as well as the arguments made on October 13, 2021 (Transcript at ECF# 1879]. Mr. Orena further respectfully submits that the government has a continuing obligation to disclose to the Probation Department, the defense, and to the Court the entire body of exculpatory and impeachment evidence it either withheld at the time of Mr. Orena's trial or that it became aware of since then, including all evidence of government misconduct in any way related to the assertions against Mr. Orena in the "Revised" PSR.

---

[8] Rule 32(i)((1)(A) highlights the central importance of the PSR by expressly requiring the Court to assure itself that the defendant and defense counsel have discussed the PSR and any addendum. As an aside, it is hard to see how this obligation can be fulfilled, given Mr. Orena's dementia.

**Specific Objections**

Without waiving his position that the "Revised" PSR does not comply with Rule 32 or the underlying purpose in providing an "updated" PSR as requested and ordered, and is otherwise fatally for, among other reasons, being based on an incorrect version of the indictment, Mr. Orena asserts the following specific objections:

1. Objection to pages 3 and 5-6. The indictment referred to and on which the "Revised" PSR ("RPSR") is based clearly is not S-4, which the government has asserted is the operative indictment and the description of the counts in the RPSR cannot be reconciled with the copy of S-4 which the government has filed. Compare ECF## 1852 at 2, ¶C.; 1852-1. This affects the entire RPSR and the objections to it.[9]

2. Page 4 of the RPSR refers to "other defendants." Mr. Orena objects to the extent this list omits relevant facts related to the other cases and omits a description of recent decisions and findings reducing the sentences in some of these cases. There are additional relevant cases that should be considered by the Court for comparative/disparity purposes. This will be addressed at the

---

[9] The RPSR, at the pages identified, refers to and describes a 9 count indictment and asserts that Count 8 was vacated; the government's submission presents a 14 count indictment as the operative indictment and asserts that Count 11 was vacated.

resentencing.

3. Pages 6-13 of the RPSR purports to provide a boilerplate history of organized crime in America from 1915 (some 19 years before Mr. Orena was even born), attributed to unnamed "law enforcement authorities." There was no such evidence adduced at trial, there is no independent indicia of reliability, and it should not be a part of the RPSR in this case. Mr. Orena objects and asks that it be stricken.

4. Mr. Orena objects to the narrative on pages 13-20 based on "trial testimony" in light of developments that have come to light since the trial and original sentencing that undermine the integrity of that trial testimony and the conviction itself. [See ECF# 1869 and exhibits attached thereto].

5. Mr. Orena specifically objects to the whole narrative concerning the death of Thomas Ocera (and all allegations related to the death of Mr. Ocera) at Pages 15-17 and elsewhere, including the Guideline calculation based on this allegation, set out at ¶¶73-78 of the RPSR. As the Court has been advised, the government withheld from Mr. Orena a statement made to the government by Top Echelon Confidential Informant Frank Sparaco attributing the murder of Mr. Ocera to someone else, explaining the motive for it, and explaining further that the so-called Colombo family leadership (a role the government has attributed to Mr. Orena) were upset about Mr. Ocera's murder. [See ECF# 1869-4].

6. Mr. Orena further objects to the narrative on Page 17, attributed to unnamed "law enforcement authorities" concerning the alleged conspiracy to "assassinate" the people listed under ¶54[10] and in ¶55 that Henry "Hank" Smurra and Rosario "Black Sam" Nastasi were killed at the behest of Mr. Orena and that an innocent bystander's death was somehow attributable to Mr. Orena. There was no proof at trial of as to any of the individuals named in these paragraphs connecting Mr. Orena to a conspiracy to kill them or to their death; nor did the indictment charge Mr. Orena with the same as to any named individual. Moreover, especially in light of the government misconduct that surfaced since the original sentencing, there is no credible basis for believing these allegations to be true and certainly not to a sufficient degree to include this in Mr. Orena's RPSR.

    The murder of Mr. Smurra provides a compelling example of why these uncharged and unproven specific allegations must be rejected and stricken from

---

[10] It would appear that the government and the Probation Department are uncertain about the identity of the people on its list in ¶54. For example, in ¶54, one of the people the RPSR claims Mr. Orena is supposed to have conspired to kill was "Gregory Scarpa, Sr." However, in the Guidelines calculations intended to correspond to the allegations in ¶54, the RPSR identifies the intended target as "Gregory Scarpa, Jr." See ¶¶91-96. These were two very different people. Significantly, one of the primary pieces of material evidence withheld from Mr. Orena at his trial (and used at other related defendants' trials which ended in acquittals) was the fact that Gregory Scarpa, Sr. was a government agent, given license to remain on the street killing and fomenting the so-called "war" and that he was working closely with one of the leading "law enforcement authorities" in this case, FBI Agent Devecchio, was subsequently was charged with multiple murders and who was providing information to Scarpa, Sr. to facilitate the murders he was committing. Mr. Orena objects to crediting any of the allegations on Page 17 or the related Guidelines calculations on Pages 20-31.

the RPSR in all regards. Upon information and belief, the government's theory is that a man named Vincent DeMartino shot and killed Mr. Smurra and Mr. DeMartino was tried for conspiring to so the before Judge Nickerson in 1994 on the government's theory that he was acting to gain favor with Mr. Orena and his co-called faction. See *United States v. Cutolo*, 93 cr.1230. Upon further information and belief, that theory was wholly rejected by the jury. Mr. DeMartino and his co-defendants were found not guilty.[11] This is the only actual testing of the government's theory regarding the death of Mr. Smurra and it was rejected by a jury based on the evidence the government presented. It must be stricken Mr. Orena's RPSR, as must the Guidelines calculation based on the unsupported, unsupportable, and uncharged allegation that Mr. Orena murdered Mr. Smurra. See RPSR at ¶¶145-150. The same objection applies, of course, to the attribution to Mr. Orena of the murder of Mr. Nastasi and the corresponding Guideline calculation at ¶¶151-156 and to all other enhancements based on these and all other completely uncharged and unproven allegations. Finally on this issue, there is no basis under any cognizable theory for using Guidelines

---

[11] Interestingly, in a reported decision from the *Cutolo* case, one of Mr. DeMartino's co-defendants, identified as being a part of the so-called Orena faction was one Joseph Russo. *United States v. Cutolo*, 861 F. Supp. 1142, 1144-45 (E.D.N.Y. 1994) (identifying Joseph Russo as an alleged member of the so-called Orena faction). But in Mr. Orena's RPSR, Joseph Russo is listed as member of the so-called Persico faction Mr. Orena is alleged to have conspired to kill because of his Persico faction membership. See RPSR at ¶54.

calculations for murder with respect to the Smurra and Nastasi deaths; for at most, putting aside, *arguendo*, the fatal deficiencies herein identified with such attribution, at most, even if somehow the Court were to (unfairly and erroenously) conclude that the record were sufficient to include some conduct with respect to these two, the most that could be attributed would be a conspiracy charge. Mr. Orena was charged with conspiring to murder the unnamed so-called Persico faction under the Racketeering Act theory upon which the RPSR apparently is relying, not murder. The broader objection, though, is that there is no basis to conclude that the jury's verdict established any of the allegations and corresponding Guideline calculations concerning the people named in ¶¶54-55.

7. Mr. Orena objects to the provisions in the RPSR that attributes the individual murder conspiracies identified to Mr. Orena, for the foregoing reasons (because Mr. Orena was never specifically charged with them, because the government misconduct evidence that subsequently surfaced undermines this theory, because there was no proof of the same at trial, and for the other reasons previously noted) and because this theory of treating each such alleged conspiracy arising from a count or counts charging the same without identifying any particular target or putting on proof regarding any of the targets listed in the RPSR, in order to increase the Guidelines level was expressly rejected by Judge Glasser in *United*

*States v. Donofrio*, 817 F. Supp. 321 (E.D.N.Y. 1993) (regarding so-called Persico faction defendants found guilty of conspiring to kill so-called Orena faction people).

8. Based, *inter alia*, on information provided by TECI Sparaco and withheld from Mr. Orena by the government, Mr. Orena objects to the attribution of the possession of firearms at ¶¶62-66 and the corresponding Guidelines calculations at ¶¶171-177.

9. Mr. Orena objects to the use of the Guideline for First Degree murder in this case and a corresponding base offense level of 43 under §2A1.1.  Mr. Orena was charged with violating New York Penal Laws charging Second Degree murder. Upon information and belief the base offense level at the time of the original sentencing in this case for second degree murder was 28.  He objects to using any Guideline for First Degree murder for any purpose and to all Guideline calculations using that for any purpose, including the calculations in ¶¶167-170; 178-184

10.  Mr. Orena objects to any and all portions of the RPSR that attribute to him any offense related to Jack Leale [See ¶¶191-198].  There is no credible evidence attributing his death to Mr. Orena and government documents have, indeed, reflected a completely different theory concerning his death.  Mr. Orena further

13

objects to the attribution to him of any responsibility for the death of Matteo Speranza [See ¶55]. Both matters were fully known to the government prior to trial and neither was charged against Mr. Orena as they undoubtedly would have been if the government believed it could actually prove any connection to Mr. Orena. Mr. Orena further objects to the assertion at ¶67 concerning an alleged obstruction of justice and he asserts that there was no illegal purpose or action at play in the matter described.

11. Mr. Orena objects to ¶¶248-253. He has been incarcerated for over 30 years and has no financial ability to pay any fine or any restitution or other imposed cost. He also objects to the calculations of the fines in cumulative or consecutive fashion.

   Mr. Orena respectfully reserves the right to make additional objections once the confusion concerning the operative indictment is resolved and he reserves the right to make additional sentencing arguments in a sentencing memorandum and at sentencing. At the very maximum, Mr. Orena should be sentenced to time served at his resentencing based on all factors to be considered under 18 U.S.C. §3553(a), and otherwise, as will be further demonstrated at the resentencing.

Respectfully submitted,

/s/ David I. Schoen
David I. Schoen
(ASB-0860-O42D)
Counsel for Victor J. Orena

## CERTIFICATE OF SERVICE

I hereby certify that on the 7th day of June, 2023, I caused the foregoing Objections to the Revised Presentence Investigation Report to be served on all counsel of record this Court's ECF system and on the Probation Department by emailing the same to that office at the email address by which the Revised Presentence Investigation Report was sent to the undersigned.

/s/ David I. Schoen
David I. Schoen
(ASB-0860-O42D)

David I. Schoen
Attorney at Law
2800 Zelda Road, Suite 100-6
Montgomery, Alabama 36106
Phone: 334-395-6611
E-Fax: 917-591-7586
E-Mail: DSchoen593@aol.com; Schoenlawfirm@gmail.com
Counsel for Victor J. Orena

15