

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

ALK:DEL

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

January 3, 2024

<u>By E-mail and ECF</u>

The Honorable Eric R. Komitee
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

   Re: United States v. Victor Orena
     <u>Criminal Docket No. 92-351 (EK)</u>

Dear Judge Komitee:

  The government respectfully submits this letter in connection with defendant Victor Orena's resentencing proceeding and in advance of the January 10, 2024 status conference, to provide additional authority that a resentencing is not a proper vehicle for a defendant to challenge his underlying convictions.[1]

  In short, it is well-settled in every circuit, including this Circuit, that a defendant can challenge his conviction <u>only</u> on direct appeal or by petition pursuant to 28 U.S.C. §§ 2255 or 2241—not through a resentencing proceeding. Thus, there is no basis for Orena's requested amendments to the Presentence Investigation Report ("PSR") based on alleged factual deficiencies the defendant claims exist as to his underlying convictions. Those issues were litigated and decided after Orena's conviction at trial, when Judge Weinstein imposed three life sentences and when the Second Circuit affirmed the convictions and sentences. They are not properly before this Court in connection with the defendant's resentencing on one of the nine counts of conviction. To the extent Orena seeks to incorporate "new" information in the PSR— and such information challenges Orena's conviction and the district court's previous determinations, which constitute the law of this case, such a challenge can only be made on direct appeal or pursuant to 28 U.S.C. §§ 2255 or 2241, as detailed below.

---

[1] At the July 6, 2023 status conference, the Court requested case law "that says re-sentencing is not the vehicle" for a challenge to an underlying conviction, though acknowledging that the principle "may be so obvious that case law's not necessary." July 6, 2023 Transcript at 41:4-18, attached hereto as Exhibit A.

I.      Background

        The defendant—a former acting boss of the Colombo Crime Family of La Cosa Nostra—was found guilty after a month-long jury trial on December 21, 1992 of the following offenses: racketeering, in violation of 18 U.S.C. § 1962(c); racketeering conspiracy, in violation of 18 U.S.C. § 1962(d); conspiracy to murder Thomas Ocera, in violation of 18 U.S.C. § 1959(a)(5) and New York Penal Law Sections 125.25 and 105.15; the murder in-aid-of racketeering of Thomas Ocera, in violation of 18 U.S.C. §§ 1959(a)(1) and New York Penal Law Sections 125.25 and 20.00; conspiracy to murder members of the Persico faction of the Colombo Family in-aid-of racketeering, in violation of 18 U.S.C. § 1959(a)(5) and New York Penal Law Sections 125.25 and 105.15; conspiracy to make extortionate extensions of credit, in violation of 18 U.S.C. § 892; conspiracy to make extortionate collections of credit, in violation of 18 U.S.C. § 894; using and carrying of a firearm in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1); and unlawful possession of firearms by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).

        Orena's convictions related to his leadership of the crime family in the 1980s and early 1990s. In the early 1990s, when rival member Alphonse Persico sought to take control of the Colombo crime family, then-57-year-old Orena refused to cede leadership, igniting an internecine war within the Colombo crime family. On one side were those loyal to Orena who supported his elevation to official boss; on the other were those loyal to Carmine Persico and Alphonse Persico, led by consigliere Carmine Sessa. Id. In November 1991, Orena sought to kill Persico-loyalist Gregory Scarpa, Sr. Following this attempt, the conflict erupted and members of both factions actively sought to kill members of the opposing faction. This war resulted in the attempted assassinations, woundings, or successful assassinations of at least 28 individuals. In total, 12 people were killed — three of whom were innocent bystanders.

II.     Sentencing

        Following Orena's conviction in 1992, the Probation Department prepared the PSR. The government filed no objections. In a letter dated May 6, 1993, Orena raised four objections to the PSR. See May 6, 1993 Letter, attached hereto as Exhibit B. First, Orena objected to the Guidelines calculation accounting for the conspiracies to murder named members of the rival Persico faction, including Henry "Hank" Smurra and Rosari "Black Sam" Nastasi. Orena recognized that although he was convicted of conspiracy to murder members of the rival Persico faction (which included Smurra and Nastasi), he argued that it should be counted as a single conspiracy, not multiple conspiracies. Second, Orena argued he should not be subject to an upward departure for the following relevant conduct pursuant to USSG § 4A1.3 (i.e., criminal conduct not resulting in a conviction): (a) directing his son to contact the gun shop where Orena bought his firearms, (b) his role in the murder of Jack Leale, and (c) his role in the murder of Matteo Speranza. Third, Orena argued historical information concerning La Cosa Nostra and the Colombo organized crime family should be removed from the PSR on relevance grounds. Fourth, and finally, Orena argued he did not have the ability to pay a fine.

        By letter dated May 11, 1993, Probation responded. As to the first objection, Probation noted that when there are multiple objects of a conspiracy, USSG § 1B1.2(d) directs

the Guidelines calculation to account for each conspiracy as a separate offense. The evidence at trial indicated Orena ordered the assassinations of those individuals named in the PSR, including Smurra and Nastasi. As to the second objection, Probation noted that that relevant conduct could be considered as the basis for an upward departure. As to the third objection, Probation stated that the information was merely to provide context for the sentencing court. As to the fourth objection, Probation noted that the defendant submitted no information on his financial status and that the information submitted by the government and pretrial services indicated Orena had real estate assets. Orena's objections and PSR were submitted to the Honorable Jack B. Weinstein, who presided over the trial.

On May 24, 1993, Judge Weinstein sentenced Orena to life imprisonment on Counts One, Two and Four. In a published opinion following the sentencing, Judge Weinstein made clear that Orena's objections were immaterial, writing that "[t]he Guidelines are of little assistance in these cases. They focus myopically on mechanical aspects of the offenses. Their formulaic scheme fails to account for the overall picture of these defendants developed during three trials and in three thorough and exhaustive presentence reports. These criminals must be punished in the proper context of their lives and their overall actions, not in the vacuum of "units," "offense levels" and "adjustments" created by the Guidelines." United States v. Sessa, 821 F. Supp. 870, 875 (E.D.N.Y. 1993). Judge Weinstein noted that Orena "had an important role in the Colombo organized mob and in the war for its leadership," and "participated in the full range of crimes attributed to the mobs," including "murders, conspiracies to murder, loansharking and other serious continuing crimes." Id. at 872-73. He found that "[s]tatutorily mandated considerations of general deterrence and incapacitation, 18 U.S.C. §§ 3551 and 3553, require a life sentence and high fines for" Orena. Id. at 871. He sentenced Orena as follows:

| Count | Violation | Sentence |
|---|---|---|
| One | Racketeering, 18 U.S.C. § 1962(c) | Life |
| Two | Racketeering Conspiracy, 18 U.S.C. § 1962(d) | Life |
| Three | Conspiracy to Commit Murder-in-aid-of-Racketeering, 18 U.S.C. § 1959(a)(5) and New York Penal Law Sections 125.25 and 105.15 | 10 Years |
| Four | Murder in-aid-of racketeering of Thomas Ocera, 18 U.S.C. §§ 1959(a)(1) and New York Penal Law Sections 125.25 and 20.00 | Life |
| Five | Conspiracy to murder members of the Persico faction of the Colombo crime family in-aid-of racketeering, 18 U.S.C. § 1959(a)(5) | 10 Years |
| Six | Conspiracy to make extortionate extensions of credit, 18 U.S.C. § 892 | 20 Years |

3

| Seven | Conspiracy to make extortionate collections of credit, 18 U.S.C. § 894 | 20 Years |
|---|---|---|
| Eight | Using and carrying of a firearm in relation to a crime of violence, 18 U.S.C. § 924(c)(1) | 5 Years |
| Nine | Unlawful possession of firearms by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) | 10 Years |

III.　　Direct Appeal

Orena appealed to the Second Circuit, raising multiple challenges to his conviction and sentence. United States v. Orena, 32 F.3d 704, 709 (2d Cir. 1994) (hereinafter "Orena Direct Appeal") (listing Orena's 11 claims on appeal). Orena brought the following claims on appeal:

(1)　those counts of the indictment that depended upon the existence of a RICO "enterprise" failed to state a claim because the schism in the Colombo Family (the charged enterprise) that was alleged in the indictment and proven at trial precluded satisfaction of this statutory requirement;

(2)　the evidence was insufficient to sustain the substantive and conspiracy RICO convictions;

(3)　because there was no continuing RICO enterprise, the testimony of Persico loyalists regarding Orena's racketeering activity was improperly admitted as coconspirator testimony;

(4)　the indictment failed to allege an overt act as part of the murder conspiracy of Ocera and the Persico faction members, as required by New York law, and therefore was fatally defective;

(5)　the count that charged a conspiracy to murder members of the Persico faction was also invalid because it failed to name all of the intended victims of that conspiracy;

(6)　the murder conspiracy and murder convictions should be vacated because those counts failed to specify the types of homicide that Orena committed or conspired to commit;

(7)　the district court improperly admitted into evidence certain of the firearms seized from the house in which Orena was arrested, as well as firearms and a related apparatus seized from other Colombo Family members and associates, without adequate authentication;

4

(8) the district court improperly admitted the records retrieved from Ocera's restaurant and from an apartment used by Orena faction associates as loansharking records without adequate authentication;

(9) the district court improperly excluded evidence that the government presented a conflicting theory of Ocera's death at another trial;

(10) the district court improperly fined Orena and required him to pay the costs of his incarceration; and

(11) the government condoned perjury by cooperating witness Salvatore Gravano (former underboss of the Gambino Family), and improperly failed to disclose relevant evidence regarding the testimony of Gravano and Diane Montesano (Ocera's girlfriend at the time of his murder).

The Second Circuit rejected all of Orena's claims of error and affirmed the judgment and the order denying Orena's motion for a new trial. Id. at 717. Notably, Orena did not challenge the district court's rulings on his objections to the PSR on appeal.

IV.     First Habeas Petition

Orena and his co-defendant Pasquale Amato later moved for dismissal of their indictments or for new trials pursuant to Federal Rule of Criminal Procedure 33 and filed petitions pursuant to 28 U.S.C. § 2255, on the grounds that the government violated its disclosure obligations, in addition to other alleged misconduct. United States v. Orena, 956 F. Supp. 1071, 1076 (E.D.N.Y. 1997) (hereinafter "Orena First 2255 Petition"). Their claims were based upon allegations of criminal conduct by Colombo Family member Gregory Scarpa, Sr., who was also an F.B.I. informant, and by former F.B.I. Special Agent R. Lindley DeVecchio, who was Scarpa's F.B.I. "handler." Specifically, Orena and Amato alleged that it was not they, but rather DeVecchio and Scarpa, who had killed Ocera and instigated the internecine war within the Colombo Family. See id. at 1076-77.

Judge Weinstein held several evidentiary hearings which included the testimony of DeVecchio and his former partner, Special Agent Chris Favo. Id. In a lengthy opinion which exhaustively reviewed all of the evidence, Judge Weinstein categorically rejected the defendants' claims. See generally id. Specifically, although finding that DeVecchio had shown "lapses in judgment, failures in maintaining proper perspective and unfortunate slips in ability to participate in what is an inherently treacherous and ambiguous relationship," Judge Weinstein also found that the claim that DeVecchio had deliberately attempted to assist Scarpa during the Colombo Family war had been shown by "overwhelming evidence to have been demonstrably false and an egregious distortion of the record." Id. at 1103-04.

Judge Weinstein found the government had offered "compelling and voluminous proof of Orena's guilt," id. at 1078, including testimony of cooperating witnesses, recorded conversations, and physical evidence, id. at 1081–82. Judge Weinstein also found that "the DeVecchio–Scarpa relationship was irrelevant to any events or evidence relied upon by the

5

government in the Orena . . . trial[]." Id. at 1090.  He commented that Orena's argument that undisclosed information regarding the DeVecchio–Scarpa relationship was Brady material "require[d] crossing the line from rationality to paranoia." Id. at 1097.  Finally, Judge Weinstein concluded, "[T]he DeVecchio–Scarpa connection had no discernable effect on the criminal activities of the defendants Orena and Amato or on their trials.  Each defendant was driven by the strange calculus of the criminal mobster's mind and environment, not by the F.B.I., and not by Special Agent R. Lindley DeVecchio." Id. at 1112.  Judge Weinstein accordingly denied the motions and dismissed the petitions.

The Second Circuit affirmed Judge Weinstein's decision by summary order, and the Supreme Court denied Orena's petition for certiorari.  Orena v. United States, No. 97-2277 (2d Cir. Apr. 20, 1998) (summary order), cert. denied, 525 U.S. 874 (1998).

V.     Rule 60(b) Motion

On January 17, 2003, Orena and Amato moved pursuant to Rule 60(b) of the Federal Rules of Criminal Procedure to vacate the judgment, attempting to present "further 'evidence' in a renewal of their attack on their convictions." Orena v. United States, 299 F. Supp. 2d 82, 83 (E.D.N.Y. 2004).  Judge Weinstein held an evidentiary hearing on their new motions, which included the testimony of Gregory Scarpa, Jr., the son of Gregory Scarpa, Sr., and a convicted murderer and made member of the Colombo Family who was then serving a life sentence.  Scarpa, Jr. testified that his father and DeVecchio had killed Ocera and instigated the Colombo Family war.  See id.  Judge Weinstein found that neither Scarpa, Jr. nor his "source" (i.e., Scarpa, Sr.) was credible and none of the newly presented evidence was persuasive.  See id. at 84.  Judge Weinstein remarked, "The court's decision of March 10, 1997 denying a similar collateral attack remains unshaken in its premises and findings." Id.  The motions were denied.[2]

VI.    Current Procedural Posture

In June 2020, Orena sought leave to file a successive 28 U.S.C. § 2255 motion, arguing his 18 U.S.C. § 924(c) conviction, predicated on conspiracy to commit murder in-aid-of racketeering under 18 U.S.C. § 1959(a)(5), was no longer valid after United States v. Davis, 139 S. Ct. 2319 (2019), and arguing that newly discovered evidence undermined the validity of his conviction.  The Second Circuit granted the motion and transferred the proceeding to this Court on both grounds on September 24, 2020.  See Orena v. United States, No. 20-1984 (2d Cir. Sept. 24, 2020).

In 2021, Orena requested that this Court hold in abeyance his resentencing and successive § 2255 motion, which he indicated would include the presentation of the additional evidence, pending the outcome of his then-anticipated motion for compassionate release.

---

[2]    A different motion by Anthony and Joseph Russo to vacate their convictions was denied by the Honorable Charles P. Sifton, who also found that Scarpa Jr.'s testimony was not credible.  See Russo v. United States, No. 03-CV-2059, slip op. at 56-57 (E.D.N.Y. Nov. 24, 2004).

6

On July 19, 2021, Orena moved for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). ECF Dkt. No. 1864. This Court denied the motion, see ECF Dkt. No. 1876, and the Second Circuit affirmed this Court's decision, see ECF Dkt. No. 1910.

On April 5, 2023, the Court directed defense counsel to submit a status report. On April 14, 2023, defense counsel submitted a letter requesting a de novo resentencing, citing to the government's letter dated October 15, 2020 (ECF Dkt. No. 1852) and United States v. Powers, 842 F.3d 177, 179 (2d Cir. 2016). ECF Dkt. No. 1922. The Court ordered a resentencing to take place on July 6, 2023.

By letter dated June 26, 2023, the government opposed a de novo sentencing and asked the Court to amend the judgment to remove the Section 924(c) conviction and the accompanying sentence (ECF Dkt. No. 1926), citing United States v. Pena, 58 F.4th 613, 618 (2d Cir. January 27, 2023); see also Tellier v. United States, No. 21-2959, 2023 WL 3608394, at *1 (2d Cir. May 24, 2023). As the Second Circuit explained in Pena, the "default rule" requires a de novo resentencing when a conviction is reversed in part on direct appeal. 58 F.4th at 619 (citing United States v. Rigas, 583 F.3d 108, 115–16 (2d Cir. 2009) (emphasis added)). This default rule does not apply to collateral challenges pursuant to Section 2255, because the statute "vests district courts with discretion to select the appropriate relief from a menu of options." Id.

At the July 6 status conference (see Exhibit A), the Court asked the parties to submit letter discussing whether a resentencing proceeding is "the proper vehicle for a challenge to the underlying conviction." Exhibit A at 41, 45. The Court also asked the Probation Department to be in contact with the government and defense counsel about what they believe should or should not in part of any revised PSR. Id. at 46.

The Court ordered a further status conference on January 10, 2024, at which it directed the defendant to appear by phone.

VII.   Orena's Current Challenges to the PSR

On June 7, 2023, in advance of the scheduled re-sentencing, Orena filed a 15-page letter objecting to the PSR in its "entirety" and purported to list "some brief examples" of those objections. Dkt. No. ECF 1924 at 3.[3] As described below, Orena challenges the evidence at trial, the jury's verdict, the sentencing judge's determinations and the numerous appellate decisions upholding these factual findings.[4] These objections are meritless.

---

[3]   Orena states his objections also include "all his prior filings on the subject." See ECF 1924 at 7. As Your Honor has reminded defense counsel several times, his lack of specificity as to his objections is not only confusing but fatal. As explained below, these objections are baseless and foreclosed by the law of the case doctrine. But the Court may also find that counsel's failure to state his objections is a separate ground on which to deny them.

[4]   Orena also seeks for the following to be updated: his age (Point "A", ECF 1924 at 3-4), his financial condition (Points "B" and "11", ECF 1924 at 4, 14), and his current medical

7

- Orena seeks to include alleged "government misconduct" that was purportedly "found" by Judge Weinstein. See ECF 1924 at 5-6 (Point "D"). This argument grossly mischaracterizes Judge Weinstein's rulings, which are cited and summarized above. The government has no objection to the submission of those opinions (denying Orena's motions on multiple grounds) for the Court's review as a part of the resentencing record.

- Orena objects to the PSR's reference to the operative indictment. ECF 1924 at 8 (Point "1"). There is no discrepancy between the charges in the fourth superseding indictment and the PSR. PSR at 3. At trial, Judge Weinstein instructed the jury using a trial indictment (referred to in the judgment as the "redacted superseding indictment"), which consolidated the counts against Orena and his co-defendants on trial (and removed charges for co-defendants who were not on trial). This is common practice in our District and Orena has never before sought to challenge it in his various appeals. Moreover, Counsel has not explained how this affects the PSR or the defendant's re-sentencing.

- Orena seeks to emend the PSR's reference to "other defendants," and "recent decisions and findings," to the extent those lists "omit relevant facts related to the other cases and omit[] a description of recent decisions and findings." ECF 1924 at 8 (Point "2"). Counsel does not identify which defendants or which materials he seeks to include, but states he intends to introduce this information at the resentencing. To the extent there is information that Orena seeks to have included in the PSR, he can submit it for consideration or simply include it in his sentencing submission.

- Orena objects to the PSR's recitation of relevant organized crime background as related to the defendant's offense conduct. See ECF 1924 at 5-6 (Point "3"); see PSR ¶¶ 12-44. This information is entirely proper when an individual is convicted of a racketing offense. Moreover, the record reflects Orena challenged this information at the time of sentencing and no addendum correcting the PSR issued. Furthermore, Judge Weinstein relied on the relevant history of organized crime in his sentencing decision. Sessa, 821 F. Supp. at 874-75.

- Orena objects to the PSR's recitation of the evidence adduced at trial, including the defendant's participation in the murder of Ocera. See ECF 1924 at 9 (Points "4" and "5"); see PSR ¶¶ 36-66. Orena did not challenge the jury's finding or the sufficiency of the evidence as to Ocera's murder at sentencing or on direct appeal.[5] The defendant's objections are based on "developments that have come to light since the trial and original sentencing that undermine the integrity of that trial testimony and the conviction itself,"

---

condition (Point "C", ECF 1924 at 4). As stated at the July 6, 2023 status conference, the government has no objection to including this information and shortly after the conference, provided Orena's medical records to U.S. Probation and defense counsel.

[5] On direct appeal, Orena sought to overturn the jury's conviction for the murder of Ocera by pointing to the government's failure to allege an overt act in the indictment; the Second Circuit denied the motion. Orena Direct Appeal, 32 F.3d at 709-17.

8

ECF 1924 at 9—challenges that have already been rejected on multiple occasions. In his first 2255 petition, Orena alleged DeVecchio and Scarpa had killed Ocera and instigated the internecine war within the Colombo Family. After a lengthy evidentiary hearing, Judge Weinstein found this claim was "demonstrably false and an egregious distortion of the record." Orena First 2255 Petition, 956 F. Supp. at 1103-04. In a subsequent motion pursuant to Rule 60(b), Orena again argued he did not kill Ocera. Judge Weinstein found none of the newly presented evidence was persuasive and denied the motion. Orena, 299 F. Supp. 2d at 84.

- Orena objects to the PSR's recitation of the evidence adduced at trial concerning the count of conviction for conspiracy to murder members of the Persico faction, naming Smurra and Nastasi, the information concerning other victims of the Colombo Family war, including Matteo Speranza, and the resulting Guidelines calculations based on this information. See ECF 1924 at 9 (Points "6" and "7"). Orena objected at sentencing to the inclusion of Smurra and Nastasi and Speranza in the PSR. The record reflects the Court directed no correction to the PSR. On direct appeal, Orena challenged the failure to include Smurra and Nastasi by name in the indictment. The Second Circuit held, "The government response identified twelve intended victims, . . . . [and] Orena did not make any further request for particulars on this issue." The Circuit found not only had Orena failed to preserve the issue for appeal but given the prosecution's response, he had adequate notice of the murder conspiracy charge against him. Orena Direct Appeal, 32 F.3d at 714.

- Orena objects to the PSR's inclusion of the fact that firearms were found and seized from Orena's home, ECF 1924 at 13 (Point "8"); see PSR ¶¶ 62-66, 171-77. As explained in the PSR, two judicially authorized search warrants were executed on April 1, 1992 at a residence occupied by himself and his girlfriend Gina Reale and law enforcement officials recovered nine firearms. At trial, evidence of these seizures was admitted into evidence and Orena was convicted for being a felon-in-possession of a firearm. Orena did not challenge the inclusion of the firearms in the PSR at his sentencing. On direct appeal, he challenged the district court's admission into evidence certain of the firearms seized from the residence. The Second Circuit found the district court's admission of the guns was proper.

- Orena objects to the Guideline calculation in the PSR for first-degree murder, ECF 1924 at 13 (Point "9"); see PSR ¶¶ 167-70, 178-84. It does not appear that Orena has ever sought to challenge the Guidelines calculation for first-degree murder, despite having every opportunity to do so at sentencing, on direct appeal, by habeas petition and in other appeals. Orena claims he was charged with second-degree murder under New York penal law. However, the state classification of a crime does not determine the applicable federal sentencing guideline. United States v. Rahman, 189 F.3d 88, 150 (2d Cir. 1999); see also Minicone v. United States, 353 F. Supp. 2d 316, 318 (N.D.N.Y. 2005) (noting "state law classification of a murder does not determine the applicable federal sentencing guideline, and that the same conduct that constitutes second-degree murder under New York law also constitutes first-degree murder under federal law").

9

- Orena objects to any portion of the PSR that relates to any offense against Jack Leale or Matteo Speranza, ECF 1924 at 13-14 (Point "10"); see PSR ¶¶ 55, 191-98. Orena objected at sentencing to the inclusion of Leale and Speranza in the PSR. The record reflects the Court directed no correction to the PSR. Orena raised no claim concerning either individual on direct appeal.

II. Discussion

    A. The Law of the Case Doctrine Forecloses the Defendant's Challenges to Issues Already Decided by the District Court and Second Circuit

The law of the case ordinarily "forecloses relitigation of issues expressly or impliedly decided by the appellate court." United States v. Ben Zvi, 242 F.3d 89, 95 (2d Cir. 2001). Moreover, "when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case." United States v. Uccio, 940 F.2d 753, 758 (2d Cir. 1991). Thus, "[t]he law of the case doctrine has two branches. The first requires a trial court to follow an appellate court's previous ruling on an issue in the same case." United States v. Quintieri, 306 F.3d 1217, 1225 (2d Cir. 2002). "The second and more flexible branch is implicated when a court reconsiders its own ruling on an issue in the absence of an intervening ruling on the issue by a higher court." Id. "[W]hen a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case," United States v. Uccio, 940 F.2d 753, 757 (2d Cir. 1991), unless "cogent and compelling" reasons necessitate otherwise, United States v. Tenzer, 213 F.3d 34, 39-40 (2d Cir. 2000). Moreover, where a decision has been "made at a previous stage of litigation," and "could have been challenged in [an] ensuing appeal but was not," that also becomes the "law of the case . . . for it would be absurd that a party who has chosen not to argue a point on a first appeal should stand better as regards the law of the case than one who had argued and lost." Ben Zvi, 242 F.3d at 96 (internal quotation marks and citation omitted).

Orena's purported challenges to the PSR—which are simply repackaged challenges to his conviction following a jury trial—are barred by the law of the case, and he has cited to no "cogent and compelling" reason for this court to reconsider them in light of the long procedural history in this case in which Judge Weinstein, and the Second Circuit, in certain instances, have already considered and rejected the same.[6] See Quintieri, 306 F.3d at 1225; see also United States v. Jones, 408 F. App'x 416 (2d Cir. 2010) (holding that defendant was precluded from raising objections at a resentencing proceeding where he had not raised the district court's failure to resolve those objections on appeal). As explained above, Orena's substantive challenges were raised and rejected at sentencing and in prior appeals. Notably, before his sentencing, Orena challenged the inclusion of the murders of Smurra, Nastasi, Leale and Speranza and their effect on the Guidelines. Judge Weinstein noted that while the sentences

---

[6] The only exceptions are Orena's objections to the PSR's recounting of his age and current medical circumstances, because such issues pertain to events that have arisen "after the original sentence" and have not been considered or subject to prior rulings in this case. See, e.g., United States v. Bryson, 229 F.3d 425, 426 (2d Cir. 2000) (holding that district court at resentencing may take into account changed circumstances).

10

were consistent with the Guidelines, "the Guidelines are of little assistance in these cases." Judge Weinstein imposed a life sentence, which was affirmed by the Second Circuit. That is to say, Orena raised these challenges before the district court and the Second Circuit at his time of conviction, and they were roundly rejected. Orena offers no reason to relitigate the same issues thirty years later under the guise of "revising" the PSR.

      B.      <u>Orena's Underlying Conviction Cannot Be Challenged at a Resentencing Proceeding</u>

In any event, even where the defendant's claims are not barred by the law of this case—which they are—a resentencing proceeding is not a proper forum for challenging a conviction.[7]

It is well-settled that a defendant can challenge the validity of his conviction <u>only</u> on direct appeal or through a petition pursuant to 28 U.S.C. § 2255 or § 2241. The Second Circuit explicitly recognized this principle in its affirmation of this Court's denial of the defendant's motion for compassionate release. The Second Circuit concluded that "facts and arguments that purport to undermine the validity of a federal conviction must be brought on <u>direct appeal</u> or <u>pursuant to 28 U.S.C. § 2255 or § 2241</u>." United States v. Amato ("Orena"), 48 F.4th 61, 63 (2d Cir. 2022); see also United States v. Antney, 2021 WL 4502478, at *5 (noting an attack on the validity of a conviction is properly brought on direct appeal or in a habeas petition); United States v. Binday, No. 12-CR-152 (CM), 2020 WL 4017822, at *7 n.6 (S.D.N.Y. July 16, 2020) (noting defendant's argument was "effectively a challenge to the validity of [his] conviction, which can only be brought on direct appeal or in a habeas petition").

This is also clearly established within other Circuits. See United States v. Miller, 855 F. App'x 949, 950 (5th Cir. 2021) ("And to the extent that Miller seeks to attack her underlying sentence with evidence that her co-defendant recanted inculpatory statements, the proper vehicle is a motion under 28 U.S.C. § 2255"); United States v. MacLloyd, Nos. 21-1373, 21-1447, 2021 WL 5263594, at *3 (6th Cir. Sept. 20, 2021) ("[W]hen a motion titled as a § 3582 motion otherwise attacks the petitioner's underlying conviction or sentence, that is an attack on the merits of the case and should be construed as a § 2255 motion." (alteration in original and citation omitted)); United States v. Henderson, 858 F. App'x 466, 469 n.2 (3d Cir. 2021) ("To the extent that [defendant] argues that his sentence should be vacated on this basis, we conclude that such a claim can be raised only in a § 2255 motion."); United States v. Fine, 982 F.3d 1117, 1118-19 (8th Cir. 2020) (holding that defendant's § 3582(c)(1)(A)(i) motion challenge his career offender determination and resulting sentence was unauthorized second or successive § 2255

---

       7      Nor can the Probation Department be expected to arbitrate the defendant's wholesale challenges to his conviction, poorly styled as "objections" to the PSR. Such factual disputes were decided by a jury after trial and by the district court at sentencing and two evidentiary hearings in 1997 and 2003, and affirmed at each and every junction by the Second Circuit. This is particularly true here, where Federal Rule of Criminal Procedure 32(b) does not even require a PSR in the event of resentencing where "the parties are given a full opportunity to be heard and to supplement the PSR as needed." United States v. Triestman, 178 F.3d 624, 633 (2d Cir. 1999).

11

motion); United States v. Handerhan, 789 F. App'x 924, 926 (3d Cir. 2019) ("[Section] 3582(c)(1)(A) provides a mechanism to seek a reduction in the term of a sentence, not to challenge its validity."); United States v. Arojojoye, 806 F. App'x 475, 478 (7th Cir. 2020) (concluding that district court appropriately construed defendant's challenge to the length of his sentence as a successive § 2255 motion and dismissed it for lack of jurisdiction); United States v. Harris, 807 F. App'x 896, 898 (11th Cir. 2020) (per curiam) ("[Defendant's] arguments pertaining to a constructive amendment of his indictment . . . are inappropriate in the context of an appeal of the denial of a motion to reduce his total sentence, but rather should be raised in a § 2255 motion to vacate.").

In the resentencing context, challenges to underlying convictions rarely arise (perhaps given how well-established this prohibition is). However, Simon v. United States, 359 F.3d 139, 140 (2d Cir. 2004), is instructive here. In Simon, a defendant was originally convicted in 1990 following a jury trial on one count of conspiracy to distribute more than 50 grams of cocaine base, and one count of using a firearm in relation to that conspiracy. In 1996, following the defendant's unsuccessful appeal and habeas petition challenging his conviction and sentence, the district court agreed to vacate the firearm conviction due to the Supreme Court's holding in Bailey v. United States, 516 U.S. 137, 150 (1995). The district court ordered a resentencing hearing on the remaining drug conviction. During the proceeding, the district court refused to consider various motions alleging that the drug conviction was the result of false testimony and other procedural and substantive issues. The district court reasoned that the additional claims "spoke to the part of his underlying conviction that had not been vacated and, hence, were inappropriately raised in the re-sentencing context." Id. at 140. The defendant appealed his revised sentence and the Second Circuit remanded on other grounds.[8] On remand, the district court again noted that the defendant was unable to challenge his underlying conviction during the re-sentencing proceeding. Simon v. United States, 361 F. Supp. 2d 35, 38 n.4 (E.D.N.Y. 2005) ("Prior to the resentencing hearing, Simon filed papers raising several claims, which I declined to address on the ground that they addressed the part of his underlying conviction which had not been vacated and thus, were inappropriately raised during resentencing. I explained that the claims could be raised in a new § 2255 motion.").

In addition, in a non-precedential opinion, the Tenth Circuit rejected a defendant's attempt to challenge the validity of his felon-in-possession conviction during a resentencing proceeding, which as here, arose after the Court's decision in Johnson. United States v. Gieswein, 765 F. App'x 418, 420 n.2 (10th Cir. 2019). Specifically, the Tenth Circuit explained:

> First, Gieswein seeks to undermine his felon-in-possession conviction by directing us to cases he says apply the strict scrutiny standard of review in cases involving the Second Amendment. But, for starters, Gieswein's attorneys could not challenge the underlying conviction during resentencing. Gieswein's conviction became final long ago, see 28 U.S.C. § 2255(f) (allowing § 2255 motions no

---

[8] The Second Circuit remanded the case so the district court could inquire whether the defendant's § 3582 motion should have been converted into a § 2241 petition in the first place.

> later than one-year after the conviction), and a Johnson resentencing does not open the door to challenge his conviction. Any challenge brought by Gieswein's counsel would have been untimely under the Federal Rules of Criminal Procedure. See Fed. R. Crim. P. 33(b).

Id. (citations omitted). Put differently, "federal prisoners who seek to collaterally attack the basis for imposing a sentence—including by challenging the underlying conviction—must move 'to vacate, set aside or correct the sentence' under 28 U.S.C. § 2255(a)." Dhinsa v. Krueger, 917 F.3d 70, 80-81 (2d Cir. 2019) (cited in United States v. Pica, No. 08-CR-559 (CBA), 2020 U.S. Dist. LEXIS 65751, at *3-4 (E.D.N.Y. Mar. 17, 2020).

IV.   Conclusion

For the foregoing reasons, the government respectfully requests that the Court reject defense counsel's request for an evidentiary hearing or amendments to the PSR on certain factual deficiencies the defendant claims to exist as to his underlying conviction. Those issues have been litigated and decided and are not properly before the Court now.

Respectfully submitted,

BREON PEACE
United States Attorney

By:   /s/
Devon Lash
Assistant U.S. Attorney
(718) 254-6014

cc:   Clerk of Court (EK) (by ECF and Email)
David Schoen, Esq. (by ECF and Email)

13