```
                              CASE:      VICTOR J. ORENA
                              DOCKET NO: 92-CR-351 (JBW)
```

## ADDENDUM TO THE PRESENTENCE REPORT

### OBJECTIONS

### BY THE GOVERNMENT

The government has no objections.

### BY THE DEFENDANT

A copy of defense counsel's letter of May 6, 1993 objecting to portions of the defendant's presentence report is attached.

Counsel's first objection relates to the application of Guideline 1B1.2(d) (Applicable Guidelines) and the multiple criminal act adjustment. In determining the appropriate offense level, the Probation Department applied Guideline 1B1.2(d), which states in substance that a conviction on a count charging conspiracy to commit more than one offense shall be treated as if the defendant had been convicted on a separate count of conspiracy for each offense that the defendant conspired to commit. It is the position of the Probation Department that the count of conviction (Count 5) charges the defendant with conspiring to murder members of the Persico faction of the Colombo Organized Crime Family. The language of Count 5, which uses the term "members", implies that Count 5 envelopes more than one act, or more precisely, more than one conspiracy to commit murder. Thus, Guideline 1B1.2(d) applies to Count 5 since it charges the defendant with conspiracy to murder members of the Persico Crime Faction. According to the government, evidence was introduced at trial that the defendant, as "Acting Boss" of the "Colombo Family," ordered the assassinations of numerous members of the Persico faction of this criminal enterprise. Consequently, to achieve a combined offense level for the criminal acts constituting Count 5, a multiple criminal act adjustment was made. Because there is only one count of conviction, a multiple count adjustment is not applicable.

Defense counsel's second objection relates to the grounds upon which Your Honor may upwardly depart from the sentencing guidelines. With respect to this issue, the Probation Department brings to the Court's attention two factors. First, the information contained in paragraphs 351, 352, and 353 (i.e. the defendant's obstruction of justice, and his role in the deaths of Colombo Family member "Jack" Leale and innocent bystander Matteo Speranza) was derived from the Government, who maintains that a preponderance of evidence exists that the defendant was involved, either directly or indirectly, in the offenses noted in those

paragraphs. With respect to these offenses, the Probation Department defers to the Government concerning their accuracy. Secondly, the Probation Department would invite counsel to reread the aforementioned paragraphs as nowhere in the defendant's presentence report does this department, contrary to the inference drawn by defense counsel, "recommend" that an upward departure be given. Indeed, as reflected in the defendant's presentence report, **"Per Guideline 4A1.3(a), Your Honor may consider this conduct, for which the defendant has not been convicted, as a basis for upward departure."** The inclusion of this sentence in the defendant's presentence report is not intended to be a "recommendation," rather, it merely provides Your Honor with a basis upon which an upward departure may be given should the Court so desire. It has always been, and will continue to be, the practice of this department not to recommend the implementation of either upward or downward departures, but to advise the Court of the availability of such departures.

Counsel's third objection concerns the inclusion of historical information in the defendant's presentence report. The inclusion of this information by the Probation Department was not intended to suggest that the defendant has been involved with organized criminal activities since its inception. Rather it was included to provide the Court with the historical foundation upon which the "Colombo Family" was established, and in later years led by its "Acting Boss" Victor J. Orena. Indeed, despite defense counsel's statements to the contrary, the history of organized crime (as reflected in the presentence report) has been well documented by various law enforcement authorities, including but not limited to the New York City Police Department and Federal Bureau of Investigation.

Counsel's final objection concerns the defendant's inability to pay a fine. The Probation Department would note that, with the exception of the statements contained in the presentence report concerning his ownership (either solely or with his sons) of two homes located on Long Island, the remaining information concerning the defendant's financial solvency was derived from information provided by both Pre-Trial Services and the United States Attorney's Office. Therefore, as the Probation Department is not the source of this information, we defer to them concerning the accuracy of this information. If Your Honor finds that the financial information contained in the defendant's presentence report is accurate, then it is the opinion of this department that the defendant is financially able to pay a fine, restitution, or other financial penalty. However, regarding the defendant's presentence report, the Probation Department would again note that

we make no recommendation as to the imposition of such a penalty, rather that the defendant appears financially able to pay a penalty should the Court so chose.

    Respectfully submitted,

    STEPHEN J. RACKMILL
    Chief U.S. Probation Officer

    BY: JOAN COLLINS
    U.S. Probation Officer

Approved by:

ANDREW S. BOBBE
Supervising U.S. Probation Officer

Date: May 11, 1993

*orig to AW*
*copies to GAS*
*me*

# NEWMAN & SCHWARTZ
### ATTORNEYS

641 LEXINGTON AVENUE
NEW YORK, N.Y. 10022

(212) 308-7900
FAX: (212) 826-3273

GUSTAVE H. NEWMAN
ROBERT HILL SCHWARTZ*
RICHARD A. GREENBERG
___
WILLIAM SHIELDS
ANDREW J. FRISCH
MICHELLE C. SCHECTER

*MEMBER NEW YORK AND CALIFORNIA BAR

May 6, 1993

By Hand

Honorable Jack B. Weinstein
United States District Court
  Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re: United States v. Victor J. Orena;
          92-CR-351 (S4)

Dear Judge Weinstein:

    This letter is submitted to advise you, the Probation Office, and the government of our objections to the presentence report. My secretary spoke yesterday with Alan Wolf of your staff who said that we could have until this morning to submit this letter.

    1.    <u>Counts 1, 2, and 5</u>

    Guideline 1B1.2(d) provides that a conviction for conspiracy to commit more than one offense shall be treated as if the defendant had been convicted on separate counts of conspiracy for each offense. Thus, in calculating Mr. Orena's sentence for the conspiracy to murder members of the Persico faction (as part of counts 1, 2, and 5), the presentence report provides offense levels for each conspiracy to murder a particular Persico associate which the government believes was established by the evidence at trial. The report describes those separate conspiracies as racketeering acts 2(A) through 2(K). In addition, the presentence report describes two murders, of Henry Smurra and Rosario Nastasi, as racketeering acts 2(L) and 2(M).

    The report's calculation is in error in two respects. First, the calculations for what the presentence report describes

NEWMAN & SCHWARTZ
> Honorable Jack B. Weinstein
> May 6, 1993
> Page 2

as racketeering acts 2(L) and 2(M) are based on the murder of Smurra and Nastasi when, at the most, they should be based on conspiracies to murder Smurra and Nastasi. Even if Smurra and Nastasi were actually killed, Racketeering Act No. 2 only charged Mr. Orena with conspiring to murder rival faction members, not the murders themselves. Thus, assuming the validity of the report's approach to Racketeering Act No. 2 and the report's assessment of the trial evidence, the most for which Mr. Orena can even arguably be sentenced for the deaths of Smurra and Nastasi are separate conspiracies to murder them.

Second, as Application Note 5 to § 1B1.2 explains:

> Particular care must be taken in applying subsection (d) because there are cases in which the verdict . . . does not establish which offense(s) was the object of the conspiracy. In such cases, subsection (d) should only be applied with respect to an object offense alleged in the conspiracy count if the court, were it sitting as a trier of fact, would convict the defendant of conspiring to commit that object offense.

Here, the specific object offenses on which the report's calculations are based are not alleged in the indictment. The indictment charges Mr. Orena with conspiring generally to murder unnamed members of the rival faction. Thus, there is no basis on which to conclude that the jury's verdict establishes its finding of guilt on a conspiracy to murder any particular specified person.

### 2. The Proposed Upward Departures are Unwarranted

The presentence report recommends three upward departures: one for Mr. Orena's alleged direction to his son to contact a gunshop from which guns were bought; one for Mr. Orena's alleged role in murdering Jack Leale; and one for Mr. Orena's alleged role in murdering Matteo Speranza. All three recommended upward departures are unwarranted.

First, Mr. Orena did not direct his son to contact the gunshop for any illicit reason, but to obtain the paperwork for Mr. Orena's gun purchases to be used in his defense at trial. That paperwork reflected that Mr. Orena reported his prior felony at the time of the purchases -- not a legal defense to the charge itself, but evidence of Mr. Orena's lack of intent based on his belief that his prior felony was not a bar to his purchase.

NEWMAN & SCHWARTZ

Honorable Jack B. Weinstein
May 6, 1993
Page 3

Second, numerous theories have been advanced to explain the murder of Jack Leale, and numerous people are suspected of killing him. Indeed, one of the 302's that was produced before trial by the government indicated that an entirely different group of people were responsible for Leale's murder. The government can entertain as many different theories about Leale's death as it pleases, but it may not selectively adopt one theory, unsupported by credible evidence, for the purpose of an upward departure.

Third, there is no evidence that Mr. Orena was responsible for the murder of Matteo Speranza. If there was sufficient reason to believe that Mr. Orena was somehow responsible for Speranza's murder, the government certainly would have found a way to incorporate that murder into one of the four superseding indictments it returned in this case. The government knew of the circumstances of Speranza's demise while it was repeatedly revising the charges against Mr. Orena before trial, and the government apparently concluded that no viable theory of Mr. Orena's liability for that murder could be concocted. The same is still true.

3. The Presentence Report's Boilerplate Purported History of Organized Crime Should be Disregarded

While reporting that Mr. Orena was not born until 1934 and conceding that the crimes for which he was convicted all took place in the New York area, the presentence report provides a purported history of organized crime since 1915, describing its scope from Honolulu to Houston. The government here only introduced evidence in support of the crimes charged in the indictment, and no legitimate basis exists on which even to suggest a theory under which the government's view of organized crime over the last century is relevant to Mr. Orena's sentencing.

4. Mr. Orena's Inability to Pay

Based mostly on Mr. Orena's ownership of his home (where his wife lives) and his partial interest in a second home, the presentence report concludes that Mr. Orena has the means to pay a substantial fine, restitution of as much as $2,345,979, and the cost of incarceration of almost $18,000 a year, or a total of over $350,000 if Mr. Orena lives another twenty years.

...

NEWMAN & SCHWARTZ

Honorable Jack B. Weinstein
May 6, 1993
Page 4

    To the best of my knowledge, Mr. Orena's only assets of note are his home and his partial interest in a second home. The probation report incorrectly reports that Mr. Orena has an interest in, among other things, the house at which he was arrested at 7 Cherry Grove Court, Old Westbury Farms, a condominium in Sea Ranch, Florida, or a boat in Florida. Nor does he have any money in a checking account.

    To impose a heavy monetary penalty on Mr. Orena would require that he sell or mortgage the house which is Mrs. Orena's wife only source of security. Mr. Orena does not have the means to pay to satisfy a heavy monetary sentence, especially as he does not have the means to earn an income.

    Finally, under no circumstance is there a basis on which to fix any restitution at over $2 million. Mr. Orena was not charged or convicted of loansharking, but of conspiring with others to do so. There is no evidence that he was responsible for any particular completed act of loansharking or that the circumstances of any particular transaction counsel in favor of restitution to any particular person.

                              Very truly yours,

                              Gustave H. Newman

cc: John Gleeson, Esq.
    Probation Officer Joan Collins

**UNITED STATES DISTRICT COURT**
EASTERN DISTRICT OF NEW YORK
PROBATION OFFICE

STEPHEN J. RACKMILL
CHIEF PROBATION OFFICER

75 CLINTON STREET, ROOM 405
BROOKLYN 11201-4201
718-330-2626

BROOKLYN, NEW YORK
May 11, 1993

U.S. COURTHOUSE
2 UNIONDALE AVENUE
UNIONDALE, NY 11553-1258
516-485-7140

Gustave H. Newman, Esq.
Newman & Schwartz
641 Lexington Avenue
New York, New York  10022

U.S. COURTHOUSE
300 RABRO DRIVE
HAUPPAUGE 11788
516-582-1105

USA v. Victor J. Orena
Docket No.: 92-CR-351
For Sentence:  May 24, 1993

Dear Mr. Newman:

__XXX__   We carefully considered your objections to the presentence report/guideline calculations.  Because we continue to disagree, your objections, together with our response, are being made known to the sentencing judge through the attached addendum.

\_\_\_\_\_   We are in agreement with your objections to the presentence report/guideline calculations and we are informing the court through the enclosed addendum.  If any of your objections remain unresolved, they are being made known to the court, with our response, through this same addendum.

STEPHEN J. RACKMILL
CHIEF U.S. PROBATION OFFICER

JOAN COLLINS
UNITED STATES PROBATION OFFICER

enc.
PROB/EDNY
Rev. 7/92