UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------ x
                                                    :

UNITED STATES OF AMERICA                            :

                                                    :        Case No. 92-CR-351 (EK)

        – against –                                 :

                                                    :        **ORAL ARGUMENT**

                                                    :        **REQUESTED**

VICTOR ORENA,                                       :

                Defendant.                          :

                                                    :

------------------------------------------------------------ x


**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
VICTOR ORENA'S MOTION FOR AN EMERGENCY COMPASSIONATE
RELEASE & SENTNECE REDUCTION PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)**


Law Office of Gerard Marrone, PC
Gerard M. Marrone, Esquire
66-85 73rd Place, Second Floor
Middle Village, New York 11379
718-261-1711
gmarronelaw@gmail.com
Attorney for the Defendant

Victor Orena, by and through his undersigned counsel, respectfully submits this memorandum of law and the attached exhibits in support of his motion, pursuant to 18 U.S.C. § 3582(c)(1)(A), for entry of an Order granting an emergency compassionate release and reducing his life sentence of which he has already served over 34 years to time-served and a five-year term of supervised release.[1] The Court in the past has left the possibility open that if and when Orena's condition worsens, than he could re file for Compassionate Release. As recently as January/February 2025 Orena was in the ICU on three different occasions, with toxic respiratory failure, heart failure and was considered critical. In fact, Orena's family was called to inquire if the patient should be resuscitated in the event that he goes into total heart failure. He suffered from hypoxic respiratory failure/bi lateral pleural effusions pneumonia and chf exacerbation and needed fluids to be removed via a chest tube. Prognosis being poor. In addition to this, Orena's dementia has gotten so bad that he is completely helpless at this point and is legally blind. He is bed ridden and needs assistance for literally all of his needs. As the Court will see below more specifically, Orena is close to the end of his life.

## PRELIMINARY STATEMENT:

It is nearly impossible (and almost certainly unwise) to make final decisions (or, at least, a just final decisions) at an initial sentencing hearing about how long someone convicted of serious criminal conduct should spend in prison. A life sentence is quickly given out in the event a

---

[1] Even though Mr. Orena seeks a sentence reduction to time served, this Court is not limited to choosing between "immediate release and no release, but nothing in between." *United States v. Rodriguez*, 429 F. Supp. 3d 306, 308 (S.D.N.Y. 2020). Rather, "compassionate release is a misnomer" because "18 U.S.C. § 3582(c)(1)(A) speaks of sentence reductions." *United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020). This Court therefore "could, for instance, reduce but not eliminate Orena's sentence" or "end his term of imprisonment but impose a significant term of probation or supervised release in its place." *Id.* (internal citations omitted).

defendant, in general choses to go to trial and is convicted. This is despite any plea negotiations he may have had and a potential disposition that may have set an individual defendant free after 20 to 25 years in prison. However, this is exactly how the federal criminal justice system works. Sentences are final when imposed. And, until the recently enacted First Step Act, virtually no means existed for taking a "second look" at them, even decades later when continued confinement (for at least some offenders) can no longer reasonably be justified on moral, ethical or utilitarian grounds. This is exactly the situation we have with Orena.

Congress did, when its abolished parole through passage of the Comprehensive Crime Control Act of 1984, vest the BOP with the authority to review the sentences imposed on a few narrow categories of defendants. But the BOP largely failed to exercise that discretion.[2] Responding to concerns that the BOP was not making adequate use of its legal authority (and for

---

[2]     In April 2013 the Office of the Inspector General of the U.S. Department of Justice (the "OIG") found that the Director of the BOP rarely filed sentence reduction motions and, thus, concluded that the "BOP does not properly manage the compassionate release program, resulting in inmates who may be eligible candidates for release not being considered." *See* U.S. Dep't of Justice, Office of the Inspector General, *The Federal Bureau of Prisons' Compassionate Release Program* (Apr. 2013) at i–iv (found at https://oig.justice.gov/ reports /2013/e1306.pdf) (last visited Mar. ___, 2024). *See also* Hon. Carlton W. Reeves, Chair of the U.S. Sentencing Commission (Apr. 5, 2023) ("Before the 1980s, people in federal prisons regularly had their sentences reduced if they proved they had reformed themselves. When the Sentencing Commission was created in 1984, Congress ended this system of federal parole. At the same time, Congress created a tool that judges could invoke if there were 'extraordinary and compelling reasons' to reduce or end an incarcerated person's term of imprisonment. Congress tasked [the U.S. Sentencing Commission] with describing what reasons counted as 'extraordinary and compelling.' For decades, this sentence-reducing tool went almost entirely unused") (found at https://www.ussc.gov/sites/default/files/pdf/ amendment-process/public-hearings-and-meetings/20230405/20230405_remarks.pdf (last visited Mar. ___, 2024); Christie Thompson, *Frail, Old and Dying, but Their Only Way Out of Prison Is a Coffin*, N.Y. TIMES (Mar. 7, 2018) ("From 2013 to 2017, the Bureau of Prisons approved 6 percent of the 5,400 applications received, while 266 inmates who requested compassionate release died in custody") (found at https://www.nytimes.com/2018/03/07/us/prisons-compassionate-release-.html).

other unrelated reasons), lawmakers passed, and in December 2018 then-president Donald J. Trump signed into law, the bipartisan First Step Act, a sweeping criminal justice reform bill designed to promote rehabilitation, lower recidivism and reduce excessive sentences. Among other things, the First Step Act authorizes federal judges to take a "second look" at the sentences imposed on offenders who present "extraordinary and compelling reasons" for sentence reductions and to reduce the sentences (even to time-served) of those individuals for whom the 18 U.S.C. § 3553(a) sentencing factors support a sentence reduction.

Victor Orena is precisely the type of individual for whom the First Step Act was intended. He has served 34 years of life sentence, being arrested and remanded to custody continuously since April 1, 1992 He suffers from numerous serious and debilitating medical conditions that hamper his ability to function. He is legally blind and has severe and advanced dementia has left him in a childlike condition. I am saddened to tell the Court that Orena is now, 4 years after his last application for compassionate release and is near the end of his life. Throughout his incarceration, he has rehabilitated himself to the fullest extent possible even though he did not stand to gain anything from doing so other than personal improvement. He has a very close-knit group of family and friends who are committed to supporting him if he is released from prison. Also, he has never made any excuses for his decidedly serious criminal conduct. Orena has never sought to justify, diminish or detract from the gravity of his offenses. Rather, he has always and unequivocally accepted responsibility for his criminal conduct that he had committed.

Accordingly, we submit that this Court should enter an Order, pursuant to 18 U.S.C. § 3582(c)(1)(A), reducing Orena's life sentence to time-served.

## FACTUAL AND PROCEDURAL BACKGROUND:

Victor Orena respectfully moves the Court for his release from prison, pursuant to 18 U.S.C. §3582(c)(1)(A)(i). This is the second application for Compassionate Release brought by Mr. Orena. The first was decided by Your Honor on October 27, 2021. At the time of the Defendant's first request for compassionate release he was gravely ill. Suffering from Alzheimer disease, diabetes, abdominal aortic aneurysm with recent increase in size, hypertension, hyperlipidemia, benign prostatic hyperplasia, glaucoma, gastroesophageal reflux disease, osteoarthritis, degenerative joint disease in both hands and knees, anemia, complete atrioventricular block, and pacemaker use.

Today I am saddened to inform the Court that Orena's condition has significantly worsened and he has deteriorated. There now exists a significant change in circumstances which prompt Orena to ask the court again to consider release. Counsel will elaborate more below, however Orena suffers from Alzheimer disease, diabetes, abdominal aortic aneurysm with recent increase in size, hypertension, hyperlipidemia, benign prostatic hyperplasia, glaucoma, gastroesophageal reflux disease, osteoarthritis, degenerative joint disease in both hands and knees, anemia, complete atrioventricular block, and pacemaker use.

## THE FIRST STEP ACT AUTHORIZES THE REQUESTED RELIEF:

"Section 3582(c)(1)(A)(i) "empowers a court to reduce a defendant's term of imprisonment if it finds that 'extraordinary and compelling reasons warrant such a reduction.'" *United States v. Ebbers*, 432 F. Supp. 3d 421, 422 (S.D.N.Y. 2020) (quoting 18 U.S.C. § 3582(c)(1)(A)(i))." *United States v. Colon*, 2021 U.S. Dist. LEXIS 41244, *2 (E.D.N.Y., March 4, 2021).

Orena has never disputed the criminal conduct for which he was convicted at trial. Rather, he recognized, and has always accepted full responsibility for, and was remorseful for, the crimes he committed. I speak of Orena's remorse and acceptance of responsibility in the past tense because of his diminished mental capacity due to his severe dementia he can no longer comprehend even why he is in jail. Indeed, Orena has engaged in serious criminal conduct that constituted serious violations of the law deserving of condemnation and punishment. Still, today, 34 years after his arrest and detention, and after doing all he possibly could to rehabilitate and reform himself, Orena, particularly given his serious medical conditions, is worthy and deserving of a "second look" and a "second chance" in the form of a reduced sentence of time-served. *See United States v. Vigneau*, 473 F. Supp. 3d 31, 39 (D.R.I. 2020) ("it is hard to reconcile Mr. Vigneau's thirty-year sentence with modern sentencing regimes and statistics, and especially with an ever-increasing body of research that questions the effectiveness of imprisoning convicted defendants for a period greater than reasonably necessary").

## 18 U.S.C. § 3582(c)(1)(A) EMPOWERS THIS COURT
## TO REDUCE MR. ORENA'S SENTENCE

Pursuant to the First Step Act's changes to 18 U.S.C. § 3582(c)(1)(A) district courts may now reduce a defendant's sentence upon the filing of a sentence reduction motion after the occurrence of the first of the following two events (commonly known as "exhaustion" of "administrative remedies"): (1) a Warden's rejection of a request for a sentence reduction motion;

or (2) the passage of thirty days without a response from a Warden to a request for a sentence reduction motion.

Also, pursuant to Guidelines amendments that went into effect on November 1, 2023, Application Note 1B1.13 to the Guidelines no longer governs 18 U.S.C. § 3582(c)(1)(A) sentence reduction motions (in the Eleventh Circuit or elsewhere). *See* https://www.ussc.gov/sites/ default/files/pdf/amendment-process/reader-friendly-amendments/20230405_prelim-RF.pdf Rather today, no limits exist as to the "extraordinary and compelling reasons" upon which a sentence reduction motion may be based or granted. *See United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020) ("the First Step Act freed district courts to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release").

This Court therefore has broad discretion to determine whether "extraordinary and compelling reasons" exist such that a reduction of Orena's life sentence is warranted. *See United States v. Anderson*, Case No. 18-CR-71 (RJA), 2021 WL 776975, at *2 (W.D.N.Y. Mar. 1, 2021) ("[d]istrict courts have broad discretion in deciding whether to grant or deny a motion for a sentence reduction"); *United States v. Johnson*, Case No. 93-CR-631 (PGG), 2021 WL 640054, at *3 (S.D.N.Y. Feb. 18, 2021) ("the district court has broad discretion in evaluating a defendant's motion for compassionate release . . . and may consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them") (internal citations and quotation marks omitted).[3]

---

[3] Congress did provide in 28 U.S.C. § 994(t) that "[r]ehabilitation of the defendant *alone* shall not be considered an extraordinary and compelling reason" for a sentence reduction (emphasis added). Lawmakers no doubt legislated that limitation so that district courts would not

Generally speaking, thus, after exhausting his/her BOP administrative remedies, "a court may reduce a defendant's term of imprisonment" pursuant to 18 U.S.C. § 3582(c)(1)(A) "if it: (1) finds that extraordinary and compelling reasons warrant a reduction; (2) finds that the defendant will not pose a danger to the safety of any other person in the community; and (3) considers the sentencing factors outlined in 18 U.S.C. § 3553(a)." *United States v. Khawaja*, Case No. 18-CR-127 (LM), 2020 WL 5549123, at *2 (D.N.H. Sept. 16, 2020).[4]

**Legal Analysis:**

The Court in *United States v. Thrower*, 495 F. Supp. 3d 132, 137-138 (E.D.N.Y. 2020), succinctly set out the established framework for the defendant's burden and the court's analysis with respect to a motion for compassionate release under the First Step Act as follows:

---

use a defendant's rehabilitation – standing alone – as a basis for a sentence reduction, thereby creating a substitute for the parole system that Congress abolished in passing the Comprehensive Crime Control Act of 1984. But legislators' use of the modifier "alone" demonstrates that rehabilitation is still a relevant consideration for 18 U.S.C. § 3582(c)(1)(A) sentence reduction motions. *See United States v. Brown*, 411 F. Supp. 3d 446, 448 (S.D. Iowa) (the First Step Act was adopted "to promote rehabilitation of prisoners and unwind decades of mass incarceration") (internal citations omitted). *Cf. Pepper v. United States*, 562 U.S. 476, 481 (2011) (holding that "when a defendant's sentence has been set aside on appeal, a district court at resentencing may consider evidence of the defendant's post sentencing rehabilitation" and that "such evidence" may support a sentence reduction); *United States v. White*, 655 Fed. App'x 42, 44 (2d Cir. 2016) ("We have observed that a court's duty is always to sentence the defendant as he stands before the court on the day of sentencing") (internal quotation marks omitted).

[4] 18 U.S.C. § 3582(c)(1)(A) sentence reduction motions do not constitute an appeal or review of a BOP administrative determination on a request for a sentence reduction. Rather, courts are required to consider 18 U.S.C. § 3582(c)(1)(A) sentence reduction motions on a *de novo* basis. *United States v. Beck*, 425 F. Supp. 3d 573, 587 (M.D.N.C 2019) ("the terms of the First Step Act give courts independent authority to grant motions for compassionate release and says nothing about deference to BOP, thus establishing that Congress wants courts to take a *de novo* look at compassionate release motions").

"To qualify for such relief, defendants must show: (1) that they have "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on their behalf," or that thirty days have lapsed "from the receipt of such a request by the warden of [their] facility, whichever is earlier"; (2) that "extraordinary and compelling reasons warrant" a reduction in the term of imprisonment; (3) that these reasons outweigh "the factors set forth in section 3553(a) to the extent that they are applicable"; and (4) that a sentence reduction "is consistent with applicable policy statements issued by the Sentencing Commission." Id. § 3582(c)(1)(A); *see United States v. Cato*, No. 16-CR-326 (ARR), 2020 U.S. Dist. LEXIS 175554, 2020 WL 5709177, at *3 (E.D.N.Y. Sept. 24, 2020) (noting that defendant bears the burden of proof). "Even if a defendant carries this burden, district courts have broad discretion in deciding whether to grant or deny a motion for a sentence reduction." *Cato*, 2020 U.S. Dist. LEXIS 175554, 2020 WL 5709177, at *3 (internal quotation marks omitted).

Accordingly, in determining what constitutes "extraordinary and compelling reasons," a district court has "discretion" to consider "the full slate" of arguments that defendants present to support a sentence reduction. *United States v. Brooker*, No. 19-3218, 976 F.3d 228, 2020 U.S. App. LEXIS 30605, 2020 WL 5739712, at *7 (2d Cir. Sept. 25, 2020).[5] "The only statutory limit on what a court may consider to be extraordinary and compelling is that '[r]ehabilitation . . . alone shall not be considered an extraordinary and compelling reason.'" 2020 U.S. App. LEXIS 30605, [WL] at *8 (quoting 28 U.S.C. § 994(t)).

The Sentencing Commission's policy statement explicating "extraordinary and compelling reasons" under § 3582(c)(1)(A)(i) is not binding on a district court, see 2020 U.S. App. LEXIS 30605, [WL] at *6, but it does provide some guidance. Where a defendant seeks a sentencing modification due to medical conditions, the Sentencing Commission suggests that "extraordinary and compelling reasons" may exist in two scenarios. First, "[a] defendant is [**8] suffering from a terminal illness," such as "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, [or] advanced dementia." U.S. Sentencing Comm'n, U.S. Sentencing Guidelines Manual § 1B1.13 cmt. 1(A)(i) (2018) ("U.S.S.G."). Second, "[a] defendant is . . . suffering from a serious physical or medical condition, . . . suffering from a serious functional or cognitive impairment, or . . . experiencing deteriorating physical or mental health because of the aging process" that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which [the defendant] is not expected to recover." Id. cmt. 1(A)(ii). In any scenario, "an extraordinary and compelling reason need

---

[5] *See United States v. Brooker*, 976 F.3d 228 (2d Cir. 2020).

not have been unforeseen at the time of sentencing in order to warrant a reduction in the term of imprisonment." *Id*. cmt. 1(A)(ii)cmt.

The medical and physical conditions from which Orena suffers are progressive, meaning they will only worsen as he continues to age. Indeed, he is not expected to recover (or even improve) from many of the medical and physical conditions from which he suffers. Rather, Orena is close to death. This is a very sad situation. Orena's medical and physical conditions will continue to deteriorate as they inevitably advance as he grows older and older. He is already 90 he has very little time left. Simply put, Orena's "body and mind [are] besieged with mounting, serious afflictions." *United States v. Hansen*, Case No. 07-CR-52 (KAM), 2020 WL 1703672, at *8 (E.D.N.Y. Apr. 8, 2020). Put differently, "it is evident" that Mr. Orena "is experiencing a serious deterioration in physical health as he ages." *United States v. Esparza*, Case No. 07-CR-294 (BLW), 2020 WL 1696084, at *2 (D. Id. Apr. 7, 2020) *See also United States v. Salemo*, Case No. 11-CR-65 (JSR), 2021 WL 4060354, at *4 (S.D.N.Y. Sept. 7, 2021) (finding "extraordinary and compelling reasons" for a sentence reduction for a 77-year-old defendant based on his "age and growing list of medical problems").

Given the foregoing, a reduction of Orena's life sentence to time-served would reflect not only the reality of his medical and physical conditions today but also the inevitable deterioration of his health as he continues to age and nears the very soon end of life. *See United States v. Samuel*, Case No. 16-CR-0117 (ELH), 2023 WL 8650366, at *15 (D. Md. Dec. 14, 2023) (reducing sentence of 56-year-old career offender to 120 months' imprisonment, in part, because he "suffers from an array of chronic, serious medical conditions") After all, life in prison – with its stressors, violence and disease – can significantly shorten a defendant's life expectancy. *See United States*

*v. Taveras*, 436 F. Supp. 3d 493, 500 (E.D.N.Y. 2006) (life expectancy within federal prison is considerably shortened).

A sentence reduction is consistent with the Sentencing Commission's policy statements if "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). The § 3142(g) factors are largely duplicative of those in § 3553(a), but they also include "whether the offense is a crime of violence" and "the weight of the evidence against the [defendant]." 18 U.S.C. § 3142(g)(1)-(4). *United States v. Thrower*, 495 F. Supp. 3d 132, 137-138 (E.D.N.Y. 2020)

## THE NEED TO AVOID UNWARRANTED SENTENCING DISPARITY:

In 18 U.S.C. 3553(a) Congress stressed "the need to avoid unwarranted sentence disparities" among similarly situated defendants. Here, as detailed above, all of Orena's trial co-defendants have already been released from custody. Continuation of Orena's life sentence therefore would precipitate a circumstance of unwarranted sentencing disparity – another factor that supports a reduction of his life sentence to time served. *See, e.g., United States v. Vanholten*, Case No. 12-CR-96 (RBD) (MCR), 2023 WL 8357739, at *3 (M.D. Fla. Dec. 1, 2023) ("The disparity becomes even more stark considering the law today. Mr. Vanholten would not face a mandatory minimum life term under current law").

The only real question that remains in this case, is whether Orena is a danger to the community. In the Court's decision of October 2021, the court did acknowledge the fact that Mr. Orena's medical condition was extreme and severe and standing alone with warrant release. At that time, however the Court in sum and substance reasoned that although Orena's medical condition was serious, the nature and severity of his crimes outweigh any medical condition he was experiencing at the time and potentially he continued to be a danger to the community.  Four

years later, Orena's condition is now gotten even more severe. As his condition becomes more and more severe Orena's cognition becomes more and more diminished, currently it's to the point of extreme dementia.

## **THE EXHAUSTION REQUIREMENT HAS BEEN FULLY MET**:

Pursuant to 18 U.S.C. §3582(c)(1)(A) provides two pathways by which a defendant can file a motion for compassionate release. Either defendants may exhaust an administrative right to appeal the BOP's failure to file such a motion, or wait 30 days after requesting that they do so. 18 U.S.C. §3582(c)(1)(A)(ii). The statute further specifies that "whichever is earlier" among these two potential dates is the date on which the defendant is ordinarily allowed to file. *Id.*

It is manifest that Congress's intent in enacting 18 U.S.C. §3852(c)(1)(A) was to provide a defendant with an expeditious manner for seeking compassionate release, which by its very nature, requires immediate intervention by one of the two parties who have authority over the defendant's custody, either the BOP or the Court.

On March 6, 2025 council for Orena submitted a request for a compassionate release to the warden at Federal Correctional Medical Center Devens. To date there has not been a response to this request and as a result 30 days or more has passed.

There is no issue in this case concerning Mr. Orena's exhaustion of his administrative rights under 18 U.S.C. § 3582(c)(1)(A).

For years, Mr. Orena has been housed in a federal medical center (FMC Devens) and is kept in an inpatient medical unit due to his severely debilitated medical condition and need for

full-time care and service. On March 6, 2025 Counsel for Orena, Brittany Barnett, Esq. filed an administrative request for compassionate release/reduction in sentence pursuant to 18 U.S.C. §§ 3582(c)(1)(A) and 4205(g), section 3 (b), with no response from the Warden at FMC Devens (hereto attached as exhibit "A")

As the Court will recall, in 2019, Orena filed a pro se request to the warden for Compassionate Release. At that time the Warden at FMC Devens granted Mr. Orena's *pro se* request and recommended his release from prison. However, on review of the Warden's decision, Ken Hyle, the Bureau of Prisons Assistant Director and General Counsel overrode the Warden and denied Mr. Orena's request. It should be noted that the BOP personnel at the facility level, who would be the most familiar and acquainted with Orena's medical condition granted him compassionate release.

Notably, in 2019 in denying Mr. Orena's administrative request, the Assistant Director acknowledged that Mr. Orena does, indeed, suffer from multiple extraordinarily serious medical conditions and meets the statutory criteria for a "debilitated medical condition" and for a corresponding Reduction in Sentence ("RIS"). He simply unilaterally opined that Mr. Orena's release at that time (May 3, 2019) "would minimize the severity of the offense and pose a danger to the community." *See United States v. Asaro*, 2020 U.S. Dist. LEXIS 68044 (E.D.N.Y., April 17, 2020) (granting compassionate release, notwithstanding similar position taken by Hyle).

In contrast to Mr. Hyle's unilateral and unsupported view that Mr. Orena would have posed a danger to the community, on April 20, 2021, Mr. Orena was evaluated by the BOP as to the level of risk he poses, as part of a system-wide evaluation, and the BOP concluded that Mr.

Orena falls at the very lowest level of risk possible. This was four years ago. Therefore, considering the speed at which Orena is deteriorating, Orena being a "danger to the community" is simply absolutely impossible.

Further, four years after the Mr. Hyle's intervention and denial, Orena comes before the court much sicker and near the end of his life. Hyle's position today, four years later, is no longer relevant since Orena's dementia renders him childlike. It is impossible, literally impossible to claim that Orena is still a danger to the community. He is not even aware where he is and why he is in a prison. At this point keeping Orena incarcerated is literally cruel and inhumane punishment and in violation of human rights. The BOP is punishing the shell of Orena's former self. For the United States Government to keep Orena incarcerated is simply vicious retribution for crimes committed over 34 years ago. The reality is that Italian Americans are treated and have been treated unfairly in our criminal justice system for decades. Italian Americans in the federal system in my experience get harsher sentences than other ethnic groups. There are similar situated defendants throughout the federal justice system that have received compassionate release.

## EXTRAORDINARY AND COMPELLING CIRCUMSTANCES WARRANT GRANTING RELIEF:

### Relevant Legal Framework

In evaluating whether a defendant has presented circumstances which constitute "extraordinary and compelling reasons" for a compassionate release, it is now well settled that district courts have broad discretion to consider the "the full slate" of arguments the defendant

puts before the court. *Brooker*, 976 F.3d 228 at 237. This is so in construing the "extraordinary and compelling language in both 18 U.S.C. § 3582(c)(1)(A)(i) and in U.S.S.G. §1B1.13. *Id.* at 234-238; *see also, United States v. Elias*, 984 F.3d 516, 519-520 (6th Cir. 2021) (§ 1B1.13 need not be considered when a compassionate release motion is brought directly by a defendant; the court has the discretion to define "extraordinary and compelling")[5]; *United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020) (same); *Thrower*, 489 F. Supp. 3d at 137-138.

Orena satisfies the "extraordinary and compelling circumstances" standard of 18 U.S.C. § 3582(C)(1)(A)(i). Furthermore, Orena notes that 18 U.S.C. § 3582(C)(1)(A)(ii) provides an alternative ground for compassionate release if an inmate is at least seventy (70) years of age, has served at least 30 years in prison on a sentence imposed under 18 U.S.C. §3559(c), and is not a danger to the community. Again, as stated emphatically above, it should be noted that it is literally impossible for the Orena to be a danger to the community as a result of his advanced dementia. Orena most of the time does not even know where he is and why he is even in jail. His prison conversations with family on the phone are a collection of incoherent ramblings of a very sick person." This April, marks <u>thirty-four</u> (34) years since Mr. Orena's arrest and the start of his continuous and ongoing incarceration in this case.

## FACTUAL SUMMARY OF MR. ORENA'S EXTRAORDINARY AND COMPELLING MEDICAL CONDITION AND LEGAL ANALYSIS APPLIED:

Orena suffers from multiple grave and serious medical conditions which qualify as "extraordinary and compelling" conditions supporting his compassionate release and they will be discussed below. Orena's health condition has gotten significantly worse since the 2019

Compassionate Release motion that was denied by the Court four years ago. Furthermore, an essential element supporting Orena's motion for compassionate release on medical grounds is exactly within the specific examples the Sentencing Commission gives in its criteria of what is intended to constitute an "extraordinary and compelling" circumstance for these purposes. In simple terms, Orena is a text book case. Orena suffers from advanced dementia/Alzheimer's disease. In addition to this, Orena is legally blind. He needs assistance for literally everything and is at the mercy and the availability of other inmates that are assigned to assist him. Often times Orena's family do not hear from him for days because no one is able to assist Orena in making even a simple phone call. Orena is literally bed ridden except when assisted by an inmate aid. Mr. Orena must be hospitalized essentially every month due to his severe and dangerous health conditions.

Orena's medical condition constitutes exactly the kind of extraordinary and compelling conditions contemplated as supporting a compassionate release pursuant to §3582. He is a perfect candidate for sentence reduction. The law literally seems to be written for an inmate with Orena's medical condition and current state of ill health and helplessness.

In Note 1. (A)(i) of the Commentary to U.S.S.G. § 1B1.13 (2018), the Sentencing Commission expressly cites "advanced dementia" as an example of a terminal medical condition that fits squarely within what is contemplated by an "extraordinary and compelling" medical condition justifying a reduction in sentence or compassionate release. Additional examples provided in Note 1. (A)(ii) to U.S.S.G. § 1B1.13 make it clear that Mr. Orena's advanced dementia alone, especially with his undisputed inability to self-care, satisfies the "extraordinary and compelling" criteria for a compassionate release under § 3582(c)(1)(A).[7]

As mentioned above, the Warden at FMC Devens, where Mr. Orena is incarcerated, reviewed Mr. Orena's medical file and spoke with the relevant medical and correctional personnel and recommended Mr. Orena's release on medical grounds approximately six years ago. At that time the Warden's recommendation unfortunately was overridden by Mr. Hyle, based on his unilateral (and uninformed) view of the matter.

Today, Orena, is 90 years old, and has Alzheimer disease, diabetes, abdominal aortic aneurysm with recent increase in size, hypertension, hyperlipidemia, benign prostatic hyperplasia, glaucoma, gastroesophageal reflux disease, osteoarthritis, degenerative joint disease in both hands and knees, anemia, complete atrioventricular block, and pacemaker use. He is housed on an inpatient medical unit due to his severe dementia-related outbursts of anger, agitation and hostility. Orena's severe and advanced dementia has left him with a childlike mentality. Orena is literally helpless. He is unaware that he is in jail and has no idea why he is in jail. He has no recollection of his crimes and any life prior to incarceration or any short-term recollections for that matter. In additional to all of these horrible things Orena is legally blind. Accordingly, he is considered to be in a deliberated medical condition (within the meaning of BOP Policy Statement 5050.50 Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582(c)(1)(A) and 4205(g), section 3(b))."
In a recent conversation I had with Mr. Orena he told me that he was a general and had 7500 men under his command and that he helped President Trump get out of jail in addition he thought his granddaughter was his deceased wife and he told us he sent us sandwiches that we should keep in the refrigerator. Speaking with Mr. Orena even for a few minutes it is crystal clear of his mental decline. Quite frankly, it's sad.

Several of these serious medical conditions standing alone would make Mr. Orena a candidate for compassionate release, especially his advanced dementia/Alzheimer's, his heart problems, his advanced glaucoma, his diabetes, his hypertension, and his inability to move about on his own or otherwise take care of his daily needs on his own. In combination, they overwhelmingly provide a compelling basis for Mr. Orena's compassionate release. *See e.g., United States v. Rountree*, 460 F. Supp. 3d 224, 235 (N.D.N.Y. 2020) (collecting cases considering medical conditions in combination; finding that diabetes and hypertension constitute extraordinary and compelling circumstances supporting compassionate release). *See also, Groups at Higher Risk for Severe Illness*, Centers For Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html *Science Brief: Evidence used to update the list of underlying medical conditions that increase a person's risk of severe illness from COVID-19* https://www.cdc.gov/coronavirus/2019-ncov/science/science-briefs/underlying-evidence-table.html Centers for Disease Control and Prevention (Dementia, Diabetes; Heart Conditions; Hypertension).

But the overriding factor in this case that makes clear the appropriateness and fairness of a compassionate release for Mr. Orena is the advanced dementia/Alzheimer's from which he suffers and that is getting progressively worse since the 2019 BOP denial.

Similarly, it is beyond dispute that Mr. Orena's advanced dementia/Alzheimer's expressly qualifies as a medical condition that constitutes an extraordinary and compelling reason for a sentence reduction or compassionate release under §3582 and consistent with the express language of U.S.S.G. §1B1.13, cmt. n. 1(A). *See also United States v. Lochmiller*, 473

F. Supp. 3d 1245, 1248 (D. Col. 2020) (granting compassionate release based on advanced dementia and finding that in terms of evaluating whether granting compassionate release would be a sufficient deterrent to others, "there is no reason to believe that to someone with advanced dementia who is 100 months into a 405 month sentence will fail to provide general deterrence."); *United States v. Jaen*, 2020 U.S. Dist. LEXIS 131893; 2020 WL 4209283 (S.D. Fla., July 6, 2020) (granting compassionate release to 81 year old defendant who served 26 years of a life sentence based on a diagnosis of dementia/Alzheimer's); *United States v. Champagne*, 2020 U.S. Dist. LEXIS 111242, *10-*12; 2020 WL 3472911 (D. N.D., June 25, 2020) (granting compassionate release 23 years into 360 month sentence for 77 year old defendant with long criminal record for murder and other violent offenses, suffering from "mild cognitive impairment, dementia, and likely Alzheimer's disease" finding that the same is serious and substantially diminishes one's ability to provide for self-care, consistent with U.S.S.G. §1B1.13, comment n. 1(A)(ii)); *United States v. Scarpa*, 2020 U.S. Dist. LEXIS 210904; 2020 WL 6591455 (E.D.N.Y., November 11, 2020) (Korman, J.) (granting compassionate release to 69 year old defendant convicted of multiple murder conspiracies, with symptoms consistent with early stage Alzheimer's or dementia and cancer (in remission)).

In addition, because of Orena's severe medical condition the scale has tipped and the pendulum has swung to the fact that Orena it is impossible for him to be a danger to the community. No person on the street in their right mind would ever even consider him an authority in any capacity. Speaking with him and certainly meeting with him which clearly will show a shell of a man he once was.

## DEMENTIA/ALZHEIMER'S AND EXCERPTS FROM CURRENT MEDICAL RECORDS:

As mentioned extensively, there can be no dispute that Mr. Orena suffers from advanced dementia/Alzheimer's, Heart Failure, and respiratory failure that he is confined to his bed, and that his is progressively more delusional.

Mr. Orena's medical records are available through the BOP; however, I will highlight the most recent medical interactions he has had:

1. Tuffs Medical Center admission date January 18, 2025:

This record reflects that Mr. Orena arrived in critical condition on this date and was tested for pneumonia and heart failure. The records also indicate that Mr. Orena was previously seen and Saint Elizabeth's Hospital however, at the time no formal acceptance of Mr. Orena was on file. In addition, Tuffs Medical reached out to several other ICU locations to transfer Mr. Orena but those were unsuccessful as well. During this medical episode Mr. Orena needed high volumes of oxygen and was admitted into Tuffs Medical Center's ICU department for monitoring.

2. Medication list as of January 30, 2025;

The following medications were issued/renewed for Mr. Orena:

- risperidone
- Spironolactone
- Tamsulosin

- Trazodone

- Donepezil HCL

- Dorzolamide Timolol

- Ferrous Gluconate

- Glucose

- Insulin NPH

- Latanoprost

- Memantine

- Nystatin Powder

- Acetaminophen

- Aspirin

- Atorvastatin

- Cholecalciferol

- Citalopram

- Clopidogrel

3. Examination at BOP Clinic on January 31,2025:

This record reflects Mr. Orena's inability to provide self-care. More specifically the assessment details that Mr. Orena is fully dependent for all functional mobility and that his prognosis is poor. It states that he has difficulty following "1 step commands, has limited retention and has poor respiratory reaction with exertion".

4. FMC Devens x-ray report on February 24, 2025

This report details Mr. Orena's enlarged cardiac Silhouette, low lung volumes, pulmonary vascular congestion and the confirmation of his congestive heart failure.

5. Emergency Room visit February 27, 2025

This record details among other things, Mr. Orena's heart failure, artery disease, bilateral pleural effusion, and decreased breath sounds.

6. Examination at Heywood Hospital on February 28, 2025

This record details Mr. Orena's sever medical condition of CHF, Alzheimer's disease, anemia, diabetes mellitus and he is on 2L of oxygen. While Mr. Orena should have been discharged that day however, he developed worsening hypoxia. He had "persistent crackles, increased oxygen requirements of up to 10L. He was then transferred to ICU for appropriate care.

7. BOP Health Services March 4, 2025

This report details that Mr. Orena was discharged from Henry Heywood Hospital on March 3, 2025. He was diagnosed with Acute Respiratory failure, Acute systolic heart failure and Diabetes Mellitus Type II. This report details his past medical history of Alzheimer's type dementia, complete heart bloc peacemaker dependent, aortic aneurysm, HFrEF, hyperlipidemia, hypertension, DMII, OA bilateral knees, hemorrhoids, tinea cruris, latent TB, polyneuropathy, coronary artery disease with stents, CKD glaucoma.

8. FMV Devens Report on March 10, 2025;

This report details that Mr. Orena's cardiac silhouette is enlarges, he has low long volume. His left peacemaker seems not to be stable while his right side seems to be stable. He has diminished pulmonary vascular congestion, persistent right base consolidation, diminished bilateral pleural effusion.

9.   Again, there are literally hundreds of pages documenting these and other serious medical problems and Mr. Orena's inability to provide self-care, going back years already.  Reports from the last 6 months reflect his deteriorating capacity, more specifically his inability to walk or eat on his own, diminished vision, acute heart failure and respiratory issues.  Plainly speaking, Mr. Orena not only needs a full-time care taker including needing assistance in eating, showering and using the restroom, but also his severe mental decline has left him unable to comprehend current life situations.  By any criteria, Mr. Orena fits the bill for "extraordinary and compelling" medical reasons supporting a compassionate release.

## THE REASONS SET OUT ABOVE OUTWEIGH THE §3553(A) FACTORS TO THE EXTENT THEY APPLY

I respectfully submit to Your Honor that "notwithstanding the seriousness" of the criminal conduct for which Mr. Orena was convicted, a sentence of time served that provides for his immediate compassionate release from prison over 30 years, appropriately "reflects the seriousness of the offense," "affords adequate deterrence to criminal conduct," "protects the public from further crimes of the defendant," and "provides just punishment for the offense." *See United States v. Scarpa*, 2020 U.S. Dist. LEXIS 210904, *6-*8, 2020 WL 6591455

(E.D.N.Y., November 11, 2020); *United States v. McGraw*, 2019 U.S. Dist. LEXIS 78370, 2019 WL 2059488, \*5 (S.D. Ind., May 9, 2019) (granting compassionate release, notwithstanding "very serious" criminal conduct and life sentence, noting factor of deteriorating medical condition); *United States v. Rice*, 2020 U.S. Dist. LEXIS 139807, 2020 WL 450813, \*4 (S.D.N.Y., August 5, 2020) (granting compassionate release, notwithstanding "very serious crimes;" advanced age and serious health problems significantly lessen likelihood of recidivism); *United States v. Wong Chi Fai*, 2019 U.S. Dist. LEXIS 126774, 2019 WL 3428504, \*3-\*4 (E.D.N.Y., April 8, 2019) (compassionate release granted for violent gang leader serving life sentence in frail health).

Orena has had an excellent prison record. He has had pursued a long-standing interest in religious study and observance and received ordination as a eucharist minister many years ago, when he was able to participate in such activities. He also actively participated in teaching opportunities for at-risk youth sponsored by the NAACP and other organizations, working to teach such youth the importance of staying out of trouble. He has helped many other inmates better themselves as well. Suffice it to say that, by any standards, in terms of rehabilitation, prior to his severe mental and physical impairment, Mr. Orena reflected an example of full rehabilitation and did a great deal to help others get or stay on the right track. By all standards, Orena has been a model prisoner.

## THE RELIEF REQUESTED IS CONSISTENT WITH SENTENCING COMMISSION POLICY STATEMENTS.

As the Court wrote in *United States v. Thrower*, a sentence reduction is consistent with the Sentencing Commission's policy statements if "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). *United States v. Thrower*, 495 F. Supp. 3d 132, 137-138 (E.D.N.Y. 2020).

Mr. Orena is aprox. 90 years old. There is absolutely no evidence that Mr. Orena poses any danger to the safety of any other person or to the community, especially in light of his serious medical conditions and his very positive institutional record. The BOP for all intents and purposes have been or can easily listen to Orena's calls. He speaks to his sons who he does not know who they are and his granddaughter who he thinks is his deceased wife. Moreover, the Bureau of Prisons has formalized a risk of violence assessment program, based on comprehensive criteria preceding and including the inmate's time of incarceration. https://www.ojp.gov/pdffiles1/nij/256084.pdf . The BOP performed its formal risk assessment on Mr. Orena on April 28, 2021 and concluded that his risk for violence is at the lowest level: **"Minimum"**.

His severe medical condition certainly qualifies him compassionate release consistent with the Sentencing Commission policy statements set out hereinabove.

## MR. ORENA'S HOME PLAN UPON RELEASE IS IDEAL

Mr. Orena has children and grandchildren whom he can live with the moment he is released from prison and who are prepared to bring him home and provide a fully loving home addressing all his mental and physical health and all of his needs. In the event that Mr. Orena's

children cannot handle his serious condition, then he will be placed in a nursing home either in Florida near his son or New York near his other son.

## CONCLUSION

Based on all of the foregoing, I respectfully ask the Court to enter an Order providing for Mr. Orena's compassionate release from the custody of the BOP to allow him to return to his family to address his serious medical needs and to live out his life at home, with his family, after having served over 30 years in prison.

We submit that the foregoing factors – considered collectively – are more than sufficient to support a finding that Orena presents "extraordinary and compelling reasons" for a sentence reduction. *See United States v. Nafkha*, Case No. 95-CR-220 (TC), 2021 WL 83268, at *5 (D. Ut. Jan. 11, 2021) ("the court finds extraordinary and compelling circumstances by viewing Mr. Nafkha's situation holistically"); *United States v. Clausen*, Case No. 00-CR-291-2 (JPP), 2020 WL 4601247, at *2 (E.D. Pa. Aug. 10, 2020) ("[N]othing prevents the Court from concluding that a combination of factors, including rehabilitation, can together establish extraordinary and compelling reasons" for a sentence reduction).

It is difficult, if not impossible, to determine who, after having been convicted of serious criminal conduct, has the capacity for change – that is, who, like Mr. Orena, has the capacity for rehabilitation, redemption and reform. Character is far from static. And people grow, mature and evolve over the years. Moreover, there is little reason for continuing to warehouse people like cattle, as they are suffering with dementia and blind and near the end of their life like Mr. Orena,

who have paid their "debt to society" by having served over 30 years in prison and the social costs to the families left behind, the loss of human capital and productivity and the need to give people a "second chance", mercy and compassion all favor identifying people like Mr. Orena and considering them for release pursuant to 18 U.S.C. § 3582(c)(1)(A). This is not to mention nor has counsel has brought this up in this motion, the corruption that surrounded this case and the multiple acquittals for co-defendants connected with the "Colombo War" indictment based on government corruption and the fact that a government cooperator namely Scarpa was cooperating with the Government for decades while at the same time committing crimes as serious as murder. Simply put, "no right-minded observer would regard" a reduction of Mr. Orena's life sentence to time served "at this juncture and under these circumstances as a windfall." *United States v. Mongelli*, Case No. 02-CR-307 (NGG), 2020 WL 6449237, at *3 (E.D.N.Y. Nov. 3, 2020) (reducing sentence from 24 years to time served after 18 years imprisonment). Rather, reducing Mr. Orena's life sentence to time served would be the "right thing" for the "right defendant" under the "right circumstances" and for the "right reasons."

Respectfully submitted:

*Gerard Marrone Esquire*

Attorney for the Defendant

cc: AUSA Elizabeth Geddes, Esq.  (Via email)
    AUSA Devon Lash, Esq. (Via email)