

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

AXB:AB  *271 Cadman Plaza East*
F. #2023V02663  *Brooklyn, New York 11201*

December 1, 2025

<u>By ECF</u>

The Honorable Allyne R. Ross
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

   Re: United States v. Michael Sessa
     <u>Docket No. 1:92-CR-00351 (ARR)</u>

Dear Judge Ross:

  The government respectfully submits this letter in response to defendant Michael Sessa's June 17, 2025 motion to reduce his sentence to time served pursuant to Title 18, United States Code, Section 3582(c)(1)(A)(i). <u>See</u> Defendant Sessa's Memorandum in Support of Motion for Reduction in Sentence (the "Third Motion"), ECF No. 1981.

  Sessa engaged in a yearslong pattern of serious criminal conduct on behalf of the Colombo organized crime family of La Cosa Nostra (the "Colombo Crime Family" or simply, the "Family"). He ceased that conduct only upon incarceration, as a jury convicted him of eight offenses, including one count of murder and two counts of conspiracy to murder in-aid-of racketeering. Convinced that Sessa represented a danger to the community at any age, United States District Judge Jack B. Weinstein imposed a sentence including three terms of life imprisonment. Sessa now moves this Court for a third time to undo that sentence. <u>See</u> ECF No. 1840 (initial motion); ECF No. 1928 (second motion). But the Third Motion simply repackages the same arguments that Sessa made in his first two motions. Those arguments did not justify a reduction in sentence before, and they carry less force now. As detailed further herein, the Third Motion should be denied in its entirety.

I.   Background

   A.   Sessa's Offense Conduct

Sessa participated in a range of racketeering activity on behalf of the Colombo Crime Family between 1985 and his incarceration in 1992. See December 9, 1992 Presentence Investigation Report ("PSR") ¶ 13. A "made member" and acting captain of the Family, Sessa supervised a crew that operated in both Brooklyn and Staten Island. See id.

Sessa's activities on behalf of the Colombo Crime Family included a multi-year loan-sharking operation in which customers were threatened or assaulted if they fell behind on payments. See PSR ¶ 15. He was also heavily involved in plotting the murders of various individuals viewed as threats to the Family. In one instance, Sessa murdered an associate of the Family by repeatedly shooting him in the head because other members of the Family feared that the associate would cooperate with federal agents. See PSR ¶ 16. Following an internal dispute over leadership of the Colombo Crime Family, Sessa and his associates conspired to murder no less than three members of a rival faction, using machine guns, armor piercing bullets, and stolen vehicles. See PSR ¶¶ 18, 20–21. After the arrest of several coconspirators on June 10, 1992, Sessa surrendered to federal authorities on July 2, 1992. See PSR ¶ 22.

   B.   Sessa's Conviction and Sentencing

On November 12, 1992, a jury convicted Sessa after trial of eight offenses: one count of racketeering, in violation of 18 U.S.C. § 1962(c); one count of racketeering conspiracy, in violation of 18 U.S.C. § 1962(d); one count of murder in-aid-of racketeering, in violation of 18 U.S.C. § 1959(a)(1); two counts of conspiracy to commit murder in-aid-of racketeering, in violation of 18 U.S.C. § 1959(a)(5); two counts of conspiracy to make extortionate extensions of credit, in violation of 18 U.S.C. §§ 892 and 894; and one count of using a firearm in connection with crimes of violence, in violation of 18 U.S.C. § 924(c)(1). See PSR at 3–4, ¶ 1.

On May 23, 1993, Judge Weinstein sentenced Sessa to three terms of life imprisonment for the racketeering, racketeering conspiracy, and murder counts; two terms of ten years' incarceration for the murder conspiracy counts; and two terms of 20 years' incarceration for the extortion counts, all to run concurrently. Sessa was also sentenced to a consecutive term of five years' imprisonment for the firearm count. See Judgment, ECF No. 352. Summarizing the basis for the sentence, Judge Weinstein explained "the short of it is that . . . [you] have been demonstrated to be a cold-blooded murderer and a great danger to the community. I don't have any doubt that at any time that you are released . . . you will return to this serious crime life that you have led." United States v. Sessa, No. 92-CR-351, 1997 WL 177850, at *1 (E.D.N.Y. Apr. 7, 1997) (quoting sentencing transcript).

In a subsequent sentencing memorandum, Judge Weinstein reiterated that multiple terms of life imprisonment were justified in light of Sessa's pervasive and protracted record of violent racketeering activity. See United States v. Sessa, 821 F. Supp. 870 (E.D.N.Y. 1993). Noting that Sessa "participated in the full range of crimes attributed to the mobs" and "had an important role in the Colombo organized mob and in the war for its leadership," the court remarked that the evidence against Sessa and his co-defendants proved "beyond any doubt

2

that [they] will not abandon their criminal activities and mob membership upon release from incarceration . . . [No] matter how aged or infirm, they will continue to represent serious dangers to the community." Id. at 872–73; id. at 873 (observing that recorded conversations involving Sessa and codefendants "as they rode out on their killing missions were terrifying in their inanity, calculated coldness and lack of respect for human life and even the dignity of death").

  C. <u>Sessa's Initial and Second Motions for Compassionate Release</u>

  Sessa first moved this Court for a reduced sentence, or compassionate release, on June 26, 2020 (the "Initial Motion"). See ECF No. 1840. In the Initial Motion, Sessa argued that his purported rehabilitation, his asserted medical conditions, and purported sentencing disparities between him and other defendants in the Colombo Crime Family all constituted extraordinary and compelling circumstances justifying release. See id. at 1–2.

  This Court denied Sessa's motion on July 14, 2020. See generally Opinion & Order, July 14, 2020 ("July 2020 Order"), ECF No. 1843. The Court reasoned that Sessa's underlying medical conditions could present the extraordinary and compelling circumstances required for release, as those conditions placed Sessa at higher risk of negative health complications during the developing COVID-19 pandemic. See id. at 7–8. Nevertheless, the Court determined that the sentencing factors set forth at 18 U.S.C. § 3553(a) weighed in favor of the defendant's continued detention. See id. at 9 ("Sessa's evidence of extraordinary and compelling reasons for release is outweighed by the nature and circumstances of his offenses; his history and characteristics; and the need for the sentence to reflect the serious[ness] of his offense, promote respect for the law, and provide just punishment for his offense.").

  Sessa moved this Court to reconsider the July 2020 Order, arguing that an intervening change in the law had afforded the Court greater discretion in determining the circumstances that would amount to "extraordinary and compelling reasons" for a sentence reduction. See March 31, 2022 Opinion & Order ("March 2022 Order"), ECF No. 1895, at 1–2. This Court rejected Sessa's argument, noting that its denial of the Initial Motion did not turn on whether Sessa had presented extraordinary and compelling reasons for his release. See id. at 2–3.

  Sessa filed a second motion for release on July 7, 2023 (the "Second Motion"). See ECF No. 1928. Sessa renewed his claim that his purported rehabilitation, his asserted medical conditions, and alleged sentencing disparities warranted a sentence reduction, adding that two codefendants had been granted such relief. See generally id. The Court denied the Second Motion, observing that the "arguments [were] largely duplicative of those in" the Initial Motion. United States v. Sessa, No. 92-CR-351 (ARR), 2023 WL 5831162, at *2 (E.D.N.Y. Sept. 8, 2023). The Court expressed skepticism that Sessa's medical conditions and the COVID-19 pandemic "constitute[d] extraordinary and compelling reasons for compassionate release," considering "subsequent developments such as vaccines, which Mr. Sessa [had] received," and Sessa's failure to establish "that his underlying conditions [left] him uniquely vulnerable to COVID-19 despite his vaccination." Id. The Court also added that pending amendments to the United States Sentencing Guidelines "would not change [the Court's] analysis," which had considered the full range of arguments that Sessa presented and ultimately revealed "that any evidence of extraordinary and compelling reasons for release [was] outweighed by the nature and

3

circumstances of [Sessa's] offenses; his history and characteristics; and the need for his sentence to reflect the seriousness of his offense, promote respect for the law, and provide just punishment for his offense." Id. at *3.

D. Sessa's Third Motion for Compassionate Release

In the instant Third Motion, Sessa proffers five purportedly extraordinary and compelling reasons for his release: (1) his "unusually long sentence"; (2) his "imminent risk of being infected by an infectious disease"; (3) his age; (4) "other reasons," defined elsewhere as "the harsher than usual continuing prison conditions due to the COVID-19 pandemic"; and (5) his post-conviction rehabilitation. See ECF No. 1981 at 2–3, 8.

II. Legal Standard

Generally, a district court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); see Dillon v. United States, 560 U.S. 817, 824–25 (2010). Compassionate release is one of the few exceptions to this rule, allowing a court to "reduce the term of imprisonment" if certain conditions are met. 18 U.S.C. § 3582(c)(1)(A). "In general, the defendant bears the burden of demonstrating his eligibility for compassionate release." United States v. Tranese, No. 17-CR-559 (CBA), 2021 WL 25371, at *1 (E.D.N.Y. Jan. 4, 2021).

In assessing whether a reduced sentence is justified, the Court must consider both whether the defendant has presented an "extraordinary and compelling" reason for early release and the 18 U.S.C. § 3553(a) sentencing factors. See United States v. Jones, 17 F.4th 371, 374 (2d Cir. 2021). The Court should deny a defendant's motion if it concludes that either: (1) the defendant has not presented an extraordinary and compelling reason for his release; or (2) the Section 3553(a) factors weigh against release. See United States v. Roney, 833 F. App'x 850, 853 (2d Cir. 2020) (explaining that, even if the defendant presented extraordinary and compelling reasons for release, his motion could be denied based solely on a consideration of the Section 3553(a) factors). Even where a defendant presents some information in favor of his release, that information does not entitle him to relief if it does not meet the high burden of "extraordinary and compelling" circumstances. See United States v. English, No. 21-940, 2022 WL 16984529, at *1 (2d Cir. Nov. 17, 2022) (summary order) (denying early release despite medical issues).

III. Argument

Sessa's Third Motion largely recycles arguments that have been raised—and rejected—in his prior compassionate release motions. The instant motion fails for at least four reasons. *First*, as he has in the past, Sessa relies heavily upon rehabilitation despite the controlling statute providing that rehabilitation alone cannot warrant relief. *Second*, Sessa's claims that he is at risk of an infectious disease and endured harsh prison conditions mirror his prior claims that COVID-19 presented a basis for relief. Those grounds have not grown in persuasive force since the pandemic ended more than two years ago. *Third*, Sessa's reference to his age and "unusually long sentence" echo his prior claims that relief was justified due to unwarranted sentencing disparities, without satisfying the explicit requirements for each factor set forth in U.S.S.G. § 1B1.13. *Fourth*, even assuming for the sake of argument that Sessa had

4

demonstrated an extraordinary and compelling basis for release, the Section 3553(a) factors weigh heavily against a sentence reduction.

> A. Sessa Has Not Presented an Extraordinary and Compelling Reason Warranting a Sentence Reduction
>
> > i. Rehabilitation Alone Cannot Merit Compassionate Release

As he did in the Initial Motion and the Second Motion, Sessa dedicates much of the Third Motion to arguing that he should be released in light of his record of good conduct and rehabilitation efforts. See ECF No. 1981 at 24–43. The supporting evidence that he cites is also substantially the same, focusing on his limited disciplinary history, educational courses completed, and a range of letters from individuals including family, friends, and BOP officials. See id.

But as the Court is aware, "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason" for a reduction in sentence. See 28 U.S.C. § 994(t); U.S.S.G. § 1B1.13(d). "[E]very inmate should strive for a productive institutional record while incarcerated because that is what is expected." United States v. Saleh, No. 93-CR-181 (WHP), 2020 WL 3839626, at *4 (S.D.N.Y. July 8, 2020); see also United States v. Veliu, No. 17-CR-404 (KAM), 2022 WL 2484240, at *5 (E.D.N.Y. July 6, 2022) ("[M]odel prison conduct is expected.").

This Court considered substantially similar evidence of rehabilitation when adjudicating the Initial Motion, concluding that despite this "commendable record of his attempts at rehabilitation during his years in prison . . . Sessa's original sentence remains appropriate." July 2020 Order at 8–9. The Court reached the same conclusion when denying the Second Motion, recognizing that Sessa's original sentence remained appropriate while "continu[ing] to commend Mr. Sessa's efforts at rehabilitation." 2023 WL 5831162, at *2. There is no legally sufficient basis to reach a different conclusion the third time around. Sessa must provide another basis that rises to the level of an extraordinary and compelling reason for release, whether alone or in tandem with his rehabilitation efforts. As explained below, he does not.

> > ii. Sessa Has Not Established That He Is at Elevated Risk of Infection, and Conditions During the Pandemic Do Not Warrant Relief Now

Sessa also argues that he deserves a reduced sentence based on two grounds relating to the COVID-19 pandemic. *First*, he claims that he qualifies for release under U.S.S.G. § 1B1.13(b)(1)(D) because he is "at imminent risk of an ongoing infectious disease or public health emergency." ECF No. 1981 at 15. According to Sessa, "the new COVID vaccine is useless against the latest variants," and "[s]ince the virus mutates so quickly, it is always ahead of the newest strain of the vaccine." Id. at 15–16. *Second*, Sessa argues that U.S.S.G. § 1B1.13(b)(5) allows for compassionate release based upon "pandemic induced conditions of confinement." Id. at 21.

5

Contrary to his contention, Sessa has not met the high bar for relief set by Section 1B1.13(b)(1)(D). That subsection provides that extraordinary and compelling circumstances exist only where the defendant presents evidence that:

> (i) [he] is housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority; (ii) due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak of infectious disease or the ongoing public health emergency described in clause (i); and (iii) such risk cannot be adequately mitigated in a timely manner.

Sessa does not satisfy any of these three prongs, let alone all three. First, he has not established that he is housed at a correctional facility at imminent risk of "an ongoing outbreak of infectious disease" or "an ongoing public health emergency." His Third Motion relies entirely upon COVID-19, but the COVID-19 public health emergency ended over two-and-a-half years ago. See HHS Secretary Xavier Becerra Statement on End of the COVID-19 Public Health Emergency, HHS.gov (May 11, 2023).[1] While COVID-19 still exists, Sessa has provided no basis to believe that it remains an "ongoing public health emergency," or even that his facility is at imminent risk of a new COVID outbreak. This Court correctly held that COVID-19 did not present extraordinary and compelling circumstances for Sessa's release in 2023, and that holding applies with greater force now. See 2023 WL 5831162, at *2.

With respect to the second element, Sessa barely attempts to argue that he is at "increased risk of suffering severe medical complications or death," instead citing his low likelihood of recidivism. See ECF No. 1981 at 15–16 ("The mere fact that you are vaccinated does not protect you, and the risk of death from covid still exists which constitutes extraordinary and compelling reasons for compassionate release. . . . This brings us to factors such as deterrence and risk of recidivism."). At best, he implicitly argues elsewhere that he is at greater risk due to factors including hypertension, obesity, prediabetes, and high cholesterol. See id. at 18. But these are the same conditions that Sessa cited in the Second Motion, and the Court rightly expressed skepticism that they constituted extraordinary and compelling circumstances for relief when denying that application. See 2023 WL 5831162, at *2 ("Mr. Sessa has not argued that his underlying conditions leave him uniquely vulnerable to COVID-19 despite his vaccination.").

Nor does Sessa establish that he is uniquely vulnerable to COVID-19. His abstract claim that viruses are ever-mutating applies equally to all inmates, and it does not establish that he is personally at an elevated risk of infection more than two years after the end of the public health emergency. As the government previously noted, during the height of the

---

[1] Available at https://www.hhs.gov/about/news/2023/05/11/hhs-secretary-xavier-becerra-statement-on-end-of-the-covid-19-public-health-emergency.html.

pandemic courts regularly rejected compassionate release motions predicated on the same health conditions from which Sessa assertedly now suffers. See, e.g., United States v. Barnett, No. 21-2319, 2023 WL 2375684, at *1 (2d Cir. Mar. 7, 2023) (summary order) (denying early release to prisoner who argued that "his age and health conditions—diabetes, hypertension, glaucoma, cataracts, an enlarged prostate, and a persistent cough—placed him at high risk of severe illness from COVID-19"); United States v. Fox, No. 22-10-CR, 2023 WL 379539, at *1-2 (2d Cir. Jan. 25, 2023) (summary order) (denying early release to a prisoner with "obesity, high cholesterol, hypertension and pre diabetes" and noting that "[o]n multiple occasions, we have concluded that a defendant's health condition was not an extraordinary and compelling reason for a sentence reduction despite the COVID-19 pandemic"); United States v. Fragoso, No. 18-CR-179 (JMA), 2021 WL 5205633, at *3 (E.D.N.Y. Nov. 9, 2021) (denying compassionate release to a defendant with spinal cord and shoulder injuries, hypertension, high cholesterol, and elevated triglycerides) (quoting United States v. Gileno, 448 F.Supp.3d 183, 187 (D. Conn. 2020)). There is no factual or legal basis for a contrary conclusion here.

Nor has Sessa established that any such risk "cannot be adequately mitigated in a timely manner." As the government noted when opposing the Second Motion, Sessa's medical records reflect that he has previously contracted COVID-19 twice and survived both times. Nothing in Sessa's records or the Third Motion reveals that BOP personnel cannot help him manage any complications from COVID-19 in the event that he is infected a third time, particularly given his past vaccinations and subsequent advances in understanding how to effectively mitigate the risks of COVID-19.

Finally, Sessa cannot effectively argue that the conditions of his confinement during the pandemic warrant his release now. This Court considered substantially the same arguments when denying both the Initial Motion in 2020 and the Second Motion in 2023. Sessa does not cite any cases indicating that courts continue to credit his proffered rationale years after the pandemic's end, and there is no factual basis to find that rationale any more extraordinary or compelling than it was while the pandemic was ongoing.

> iii. Neither Sessa's Age Nor the Length of His Sentence Is An Extraordinary and Compelling Circumstance Warranting Relief

Sessa's last two bases for release are similarly unavailing. *First*, he argues that he "is 65 years old, an age when the risk of recidivism is greatly reduced," and that he is "experiencing a deterioration in physical health because of the aging process." ECF No. 1981 at 18–20. *Second*, he claims that he warrants relief under U.S.S.G. § 1B1.13(b)(6) because he "has served more than ten years of his sentence," his "life sentence (for one murder conviction) is unusually long," and in light of "the change in the law regarding the sentencing guidelines from the monumental decision by the United States Supreme Court in *United States v. Booker*, 125 S. Ct. 738 (2005)." Id. at 9–10. As Sessa puts it, "the change in the law created by *Booker* and the changes in the sentencing landscape today now provides a gross disparity between the sentence [he] is currently serving and the one that would be imposed today." Id. at 10.

Sessa's first argument is easily dismissed, for substantially the same reasons noted above. Under U.S.S.G. § 1B1.13(b)(2), a defendant's age is only an extraordinary and compelling circumstance where he "is experiencing a serious deterioration in physical or mental

7

health because of the aging process." While Sessa cursorily claims that "is experiencing a deterioration in physical health because of the aging process," he offers no supporting details or evidence, let alone sufficient evidence to establish that such deterioration constitutes an extraordinary and compelling reason within the meaning of the Guidelines. See ECF No. 1981 at 18. Instead, Sessa focuses almost entirely on the notion that he will not recidivate. See id. at 19–20. But a defendant's likelihood of recidivism does not bear upon the seriousness of any deterioration in his health, and the only record evidence indicates that he remains in stable condition. Sessa's age is no basis for relief.

Sessa's second argument, that his sentence is "unusually long," is also simply a reiteration of his prior arguments regarding sentencing disparities between himself and others. Those arguments did not constitute extraordinary and compelling circumstances for relief before, and they do not constitute such circumstances now. They also do not meet the explicit requirements of U.S.S.G. § 1B1.13(b)(6), which provides that "[i]f a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law . . . may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances."

Sessa fails to meet this standard in multiple respects. As an initial matter, he has not established that his sentence is "unusually long . . . after full consideration of the defendant's individualized circumstances." In that regard, although Sessa cites the sentences received by other defendants, see ECF No. 1981 at 10–14, he makes no effort to square the individual circumstances of those defendants to his own case. For example, his conclusory claim that his "life sentence (for one murder conviction) is unusually long" is squarely at odds with the Judgment alone, let alone the broader record of the case. Sessa is not merely serving a life sentence for one murder conviction. He is serving three life sentences for murder, racketeering, and racketeering conspiracy. See Judgment, ECF No. 352. And that is without considering the other five offenses of which the jury convicted him—indeed, Sessa was required to serve 25 years' imprisonment for one firearm count and extortion count. Ultimately, this case is remarkably similar to the Henoa case that Sessa cites, where this Court properly denied compassionate release to another defendant who failed to acknowledge the extent of his past crimes. See United States v. Marin Henoa, No. 96-CR-355 (ARR), 2024 WL 730482, at *4 (E.D.N.Y. Feb. 22, 2024) ("Mr. Marin fails to acknowledge, however, that his sentence is longer than the average sentence for a single murder because he was convicted on eight counts of murder, one count of aiding and abetting murder, and another count of conspiracy to murder. . . . Ultimately, Mr. Marin's 420 months sentence is not unusually long, and, as a result, I may not consider any changes in law as extraordinary and compelling reasons warranting a sentence reduction."). As this Court has already recognized, Sessa's sentence is not unusually long or disparate from others' when considered in context. See July 2020 Order at 11–12 (holding that "Sessa's argument that he should be released to avoid 'unwarranted sentencing disparities' is not compelling"); 2023 WL 5831162, at *3 (holding that "denying Mr. Sessa's [second] motion would not create 'unwarranted sentence disparities.'").

Nor has Sessa identified a "change in the law" that would "produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the

motion is filed." The Court was aware of Booker's effect on the Guidelines when it considered the Initial and Second Motions, considering Booker had been decided over 15 years earlier. There is no reason to believe that Judge Weinstein felt constrained by the Guidelines when sentencing Sessa, either. To the contrary, the sentencing court explained that "[t]he guidelines are of little assistance in these cases," and that "[s]entences most severe [were] required" to address the criminal conduct of Sessa, his co-defendants, and the Colombo Crime Family. Sessa, 821 F. Supp. at 875. In concluding, the sentencing court emphasized that "[t]o the extent [Sessa's sentence] exceed[s] the Guidelines, the court has departed upward in view of the heinous nature of these offenses and the danger these defendants pose to the community." Id.

Finally, despite Sessa's claims that Judge Weinstein would not have imposed the same sentences if he were sentencing Sessa today, that speculation is no substitute for Judge Weinstein's clearcut statements to the contrary. When first sentencing Sessa, Judge Weinstein explained in no uncertain terms that "I don't have any doubt that at any time that you are released . . . you will return to this serious crime life that you have led." 1997 WL 177850, at *1. The sentencing memorandum that he later authored only reinforced this conclusion, with the court repeating that the evidence against Sessa and his codefendants proved "beyond any doubt that [they] will not abandon their criminal activities and mob membership upon release from incarceration . . . [No] matter how aged or infirm, they will continue to represent serious dangers to the community." 821 F. Supp. at 872–73. Judge Weinstein did not express any doubt that life imprisonment was both necessary and appropriate. Sessa's speculation that Judge Weinstein might feel differently now cannot be squared with repeated holdings to the contrary.

Whether considered separately or in combination, none of the factors asserted by Sessa meets the high standard of an extraordinary and compelling reason for resentencing. The Third Motion should be denied, like the Initial and Second Motions before it.

B. The Section 3553(a) Factors Weigh Against a Sentence Reduction

Sessa also argues that the Section 3553(a) factors now favor his release, as "over 100 letters written by other inmates and BOP staff, and well over 50 letters written by members of his family and the community" show that he is a changed man. ECF No. 1981 at 44–45. He also reiterates his prior claims that he is the subject of sentencing disparities, and that he would not have received the same punishment if he was sentenced today. See id. at 46–61. Contrary to these assertions, the Section 3553(a) factors weigh heavily in favor of Sessa's continued incarceration.

As already noted above, Sessa has failed to identify any meaningful disparities between his own sentence and the sentences of similarly-situated individuals, and there is no reason to believe Judge Weinstein would have imposed a different sentence after the Supreme Court's decision in Booker. The letters that Sessa cites do not compel a contrary conclusion. Indeed, this Court already considered them when adjudicating the Initial and Second Motions, and Judge Weinstein likewise considered a similar array of purported supportive family and friends when first sentencing Sessa. See 821 F. Supp. at 873 ("The close-knit and loving relationships of these defendants with their children, their spouses or their paramours do not take precedence over their continuing evil power and their urge to commit serious crimes. The court

9

regrets the pain caused defendants' relatives by the harsh sentences that must be imposed; it is defendants' voluntary criminal acts that are responsible for their punishment.").

This Court correctly struck the same balance on multiple prior occasions. As the Court has noted, Sessa's crimes "are stark in their brutality," and he "adopted a leadership role in the Colombo Family, through which he planned and executed a wide range of criminal activity, including murders." July 2020 Order at 9–10. As to Sessa's history and characteristics, the Court explained that his offense conduct "occurred over a span of several years and was unusually pernicious," and that Sessa's good conduct while incarcerated "does not counterbalance his deep involvement in a destructive and violent criminal enterprise." Id. These observations apply with equal force today, and they rightly weigh against release. See United States v. Amato, 48 F.4th 61, 65 (2d Cir. 2022) (affirming denial of compassionate release for Sessa's codefendant Victor Orena where district court concluded sentencing factors required his continued detention, despite medical conditions amounting to extraordinary and compelling circumstances); United States v. Orena, 145 F.4th 304, 313 (2d Cir. 2025) (reaffirming Orena's sentence based upon the balance of the Section 3553(a) factors despite claim that original sentence pre-dated Booker).

Given the extraordinary seriousness of Sessa's conduct, the severe harm caused to his victims, the need to deter Sessa from reoffending, and the continued need to deter others from committing similar crimes, a reduction of his sentence would "fail to achieve the importance policies of the Section 3553(a) factors—namely, providing just punishment, affording adequate deterrence, and promoting respect for the law." Tranese, 2021 WL 25371, at *2. The Court correctly reached this conclusion when denying the Initial and Second Motions, and the Third Motion offers no persuasive reason to believe the sentencing factors weigh differently now. See July 2020 Order at 4 ("Despite Sessa's commendable efforts at rehabilitation and serious medical conditions, I agree with the government that these considerations are outweighed by the nature and circumstances of Sessa's offense, Sessa's history and characteristics, and the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense."); 2023 WL 5831162, at *3 (holding "that any evidence of extraordinary and compelling reasons for release [was] outweighed by the nature and circumstances of [Sessa's] offenses; his history and characteristics; and the need for his sentence to reflect the seriousness of his offense, promote respect for the law, and provide just punishment for his offense").

Because Sessa "has not submitted sufficient justification for upsetting the Court's previous balancing of the factors outlined in 18 U.S.C. § 3553(a), particularly in light of the seriousness of the offenses [he] committed," Pimentel v. United States, No. 99-CR-1104 (SJ), 2013 WL 646812, at *3 (E.D.N.Y. Feb. 21, 2013), his request for resentencing should be denied.

III.	Conclusion

        For the foregoing reasons, the government respectfully submits that this Court should deny the defendant's motion for a reduced sentence.

        Respectfully submitted,

        JOSEPH NOCELLA, JR.
        United States Attorney

By:   /s/ Arun Bodapati
       Arun Bodapati
       Trial Attorney
       (718) 254-6250

cc:   Clerk of the Court (ARR) (via ECF)
      Counsel for Defendant (via ECF)