UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

United States of America,

    Plaintiff,

v.                          Case No.: 92-CR-00351 (EK)

Victor J. Orena,

    Defendant.

_____/

RENEWED MOTION FOR COMPASSIOANTE RELEASE

Victor J. Orena, proceeding pro se, respectfully renewes his request for Compassionate Release. For the reasons that follow, Orena believes that this Court should grant the motion.

I. Background

Orena will assume for purposes of this motion that this Court is aware of the factual and procedural background of this case. However, for reference, Orena respectfully provides the following cases that can be referenced by the parties as required. See, e.g., United States v. Sessa, 821 F. Supp. 870 (E.D.N.Y. 1993) (Weinstein, J.)(Amended Sentencing Memorandum and Order); Orena v. United States, 956 F. Supp. 1071 (E.D.N.Y. 1997)(Weinstein, J.)(Denial of Rule 33 Motion); United States v. Orena, 32 F.3d 704 (2d Cir. 1994)(Direct Appeal); Orena v. United States, 299 F. Supp. 2d 82 (E.D.N.Y. 2004)(Weinstein, S.J.)(28 U.S.C. § 2255 Motion); and United States v. Orena, 145 F.4th 304 (2d Cir. 2025)(Second or Successive § 2255 Motion). And while not published, Orena's first Motion for Compassionate Release was denied in October of 2021. See Orena, 145 F.4th at *9.

II. Exhaustion of Administrative Remedies

Prior to submitting the instant motion to this Court, Orena exhausted his administrative remedies. On November 1, 2025, Orena sent a request to the War-

den of FMC Devens requesting a Reduction in sentence, in accordance with PS5050.
50. See Exhibit "1" (Request to Warden for RIS). And at the time of filing this motion, the warden has yet to respond to the RIS request.

And to the extent that the United States may attempt to throw out the instant motion by claiming the "claim-processing rule," Orena respectfully requests that this Court apply the Washington v. Barr, 925 F.3d 109 (2d Cir. 2019) test "in the compassionate context and waive the exhaustion requirement where exhaustion would be futile, ... or would result in undue prejudice." United States v. Griffin, 2024 U.S. Dist. LEXIS 102127 *3-4 (E.D.N.Y. 2024)(Komitee, J.)(quoting United States v. Johnson, 671 F. Supp. 3d 265, 271 (E.D.N.Y. 2023)(internal quotations omitted)). For as Orena demonstrates below, any delays brought about by such affirmative defenses as the "claim-processing rule" would certainly result in not only undue prejudice against Orena, but would only serve to increase the risk that he will die in prison.

III. Legal Standards

Having disposed of the background and exhaustion, Orena now turns to the legal standards underlying this Renewed Motion, and will follow up with a review of the merits of the case.

Orena is able to bring this motion to the Court's door, as 18 U.S.C. § 3582(c)(1)(A) "permits a defendant to bring a motion for a reduction in sentence, including release from prison, in federal district court after satysfying [the] exhaustion requirement." United States v. Fernandez, 853 Fed. Appx. 730, 731-32 (2d Cir. 2021)(unpublished). Based on the evidence Orena presented in § II, supra, he avers this court has jurisdiction to entertain the renewed motion.

Moreover, Orena understands that he bears the burden of demonstrating that extraordinary and compelling circumstances exist to warrant a reduction in sentence. See 18 U.S.C. § 3582(c)(1)(A)(i); see also United States v. Ebbers, 432 F. Supp. 3d 421, 426 (S.D.N.Y. 2020).

Once Orena has established that extraordinary and compelling reasons for a

sentence reduction indeed exist, he must then show that the 18 U.S.C. § 3553(a) factors tip the scales in Orena's favor, for "courts must still ensure that compassionate release would be appropriate after considering the factors set forth in [the statute.]" United States v. Mui, 2025 U.S. Dist. LEXIS 86597 *15-16 (E.D.N.Y. 2025) (Komitee, J.).

IV. Extraordinary and Compelling Reasons Indeed Exist

A. U.S.S.G. § 1B1.13(a)(1)

First and foremost, Orena clearly satisfies the criteria necessary to qualify for a reduction in sentence based on the "Old law," 1B1.13(a)(1). Prior to the passage of the First Step Act in 2018,[2] the only way an inmate could qualify for consideration of a reduction in sentence was to be "at least 70 years old" and to have served "at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imposed." U.S.S.G. § 1B1.13(a)(1)(B).

Orena was arrested on April 1, 1992, see Orena, 956 F. Supp. at 1082, and has been in custody ever since. It is beyond question that Orena satisfies this prong. And, Orena is currently more than 90 years old. This also more than qualifies Orena for compassionate relief review under 1B1.13(a)(1).[3]

In order to conserve judicial resources, the final two portions of the requirements of 1B1.13(a) will be reviewed in tandem with the 18 U.S.C. § 3553(a) analysis in § V, infra, especially how the analyses of § 3553(a) and § 3142(g) heavily overlap. See United States v. Blair, 2020 U.S. Dist. LEXIS 175828 *14 (E.D.N.Y. 2020) ("The factors set forth in Sections 3553(a) and 3142(g) largely overlap and therefore are analyzed together.").

---

[2] Prior to the FSA's passage, only the warden of an institution could bring compassionate release motions to the court.

[3] Orena points out to the parties that 1B1.13(a)(1) is written in the disjunctive; in other words, Orena must either demonstrate that extraordinary and compelling reasons exist or be over 70 and have served 30 years. See 1B1.13(a)(1)(A), (B). As such, Orena need not demonstrate any further merits to meet this threshold.

B. U.S.S.G. § 1B1.13(b)(6)

Orena understands that, at the time of filing the instant motion, the fate of 1B1.13(b)(6) is in the hands of the Supreme Court. See, e.g., United States v. Rutherford, 120 F.4th 360 (3d Cir. 2024), cert. granted 145 S. Ct. 2776 (2025) and United States v. Bricker, 135 F.4th 427 (6th Cir. 2025), cert. granted at No. 25-81. However, to the extent that Orena relies on (b)(6), he avers that the legal basis for this argument can still proceed in this Circuit, as the qualifying criteria for (b)(6) not only came from this Circuit, it is enshrined in a published case. See United States v. Brooker, 976 F.3d 228, 237 (2d Cir. 2020).

Regardless of the legal avenue, Orena claims that he qualifies for a reduction in sentence under this provision, as he has been imprisoned for more than 10 years; there have been intervening changes in the law since Orena's conviction that significantly alter the sentencing landscape; and, he meets the burden for what this Court considers to be extraordinary and compelling reasons.

Section (b)(6) of U.S.S.G. § 1B1.13 also provides that "a change in the law ... may be considered in determining whether a defendant presents an extraordinary and compelling reason" for a reduction in sentence, "but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed." United States v. Shaw, 2025 U.S. Dist. LEXIS 76630 *7 (S.D.N.Y. 2025). Orena will discuss (b)(6) in detail, followed by similarly-situated defendants that have been released on compassionate release, and why Orena qualifies for the same treatment.

1. Changes in the Law

In the 33 years since Orena's conviction and sentencing, the law surrounding crimina convictions has changed dramatically. Most notably is United States v. Booker, 543 U.S. 220 (2005).[4] The Guidelines sentences were mandatory from their in-

---

[4] Booker and Brooker, while similar, should not be confused with each other.

-4-

ception. However, Booker held that the Guidelines ranges should be discretionary. And while Orena understands that Booker is not retroactive, see Guzman v. United States, 404 F.3d 139, 144 (2d Cir. 2005), this holding "is relevant only as to the sentencing---Guzman does not preclude consideration of a significant post-sentencing change in the law as an extraordinary circumstance." United States v. Russo, 643 F. Supp. 3d 325, 329 (E.D.N.Y. 2022)(Block, J.).

More recently, the Supreme Court's decision in Concepcion v. United States, 597 U.S. 481 (2022), held, "the Court placed no constraints on the exercise of the district court judge's discretion should he decide to modify the original sentence," except for "'those set forth by Congress in a statute or by the Constitution.'" Id. at 330 (quoting Concepcion, 597 U.S. at 494).

Orena urges this Court, upon consideration of this renewed motion, adopt the analysis of the Hon. Frederic J. Block:

> I have consolidated for the purposes of this opinion [to] reflect the broad range of issues bearing upon factors which I believe the district courts, in light of Concepcion, may consider---in addition to those contained in Guideline § 1B1.13 and its Application Notes and referenced in Brooker---in exercising their broad discretion in deciding their compassionate release motions.

Russo, 643 F. Supp. 3d at 330.

### 2. Gross Disparity

Orena acknowledges that his 2021 motion for compassionate release was denied, and the Second Circuit affirmed this decision. See United States v. Orena, 37 F.4th 58 (2d Cir. 2022). However, it seems that the author of the original motion cited a string of cases that "generally involved defendants who cooperated with the Government." Orena, 37 F.4th at *8. Orena will not make the same mistake, as he illustrates infra how defendants that were similarly situated to Orena (i.e., Captains and leaders)---defendants who did not cooperate with the Government---were nonetheless granted compassionate release in the Southern and Eastern Districts. And as a result, none of the following defendants remain in federal custody.

### i. Anthony Russo

Russo was convicted in 1994, along with two co-defendants, for charges related to RICO; specifically, the murder-for-hire of members of Orena's Colombo faction. See Russo, 643 F. Supp. 3d at 331; see also Judge Frederic Block, A Second Chance, 51-52 (2024). The then-mandatory Guidelines at the time of Russo's sentencing meant that he was sentenced to a mandatory term of life imprisonment. See Russo, 643 F. Supp. 3d at 331.

The Hon. Frederic Block reduced[5] Russo's sentence from life to 35 years because he "ha[d] clearly demonstrated that he has achieved extraordinary rehabilitation," nad "completed more than 40 courses, obtained his GED," and had members of the prison staff "refer to Russo as a 'model inmate.'" Russo, 643 F. Supp. 3d at 332.

Part of Judge Block's reasoning for granting Russo's motion---reasons that, by the way, do not appear in the published Russo opinion---was that Judge Block found a gross disparity to have existed between Russo's life sentence (because he went to trial) and the much shorter sentences of those co-defendants that pleaded guilty. In Judge Block's account, "[o]f the seven codefendants who pled, their sentences ranged from approximately four years to 270 months." A Second Chance at 147.

Judge Block rightly questioned the motivation of the United States, who was all too eager in Russo's case to cut informants and those who plead a break, in order to ensure others die in prison, for "[i]f the Government in offering its plea deals did not believe that all those indicted on murder charges should be sentenced to life, why should the court?" Id.; see also Russo, 643 F. Supp. 3d at 335.

Judge Block also pointed out the recent findings of the Sentencing Commission, which found that from the years 2015 to 2021, the median sentence for murder was 240 months. Id. at 148.

But particualrly striking to Judge Block's reasoning for releaing Mr. Russo was

---

[5] Judge Block factored in Russo's 15% good time credit to purposely release him "a few months" after release, "at the age of seventy." A Second Chance at 149.

that the murders involved in Russo's case, just like that of Orena's, "were not directed at the public at large but were internecine executions of ruthless gang members. This turf warfare between rival factions of the Colombo family," which took place over "thirty years ago, where the mantra was [] kill or be killed." Russo, 643 F. Supp. 3d at 336.

So in the proper context, Judge Block ultimately determined:

> due to the nature and circumstances of the offense, Russo's release at this time, and at his advanced age . . . is unlikely to pose a danger to the general public, satisfying the sentencing goal 'to protect the public from further crimes of the defendant.

Russo, 643 F. Supp. 3d at 336.

### ii. Profiles of Other Defendants

Given the amount of similar facts and background between Orena and the Russo case, Orena necessarily focused on that case in particular. However, to provide extra context, Orena will provide several other similarly situated defendants:

One case to consider is that of United States v. Johnson, 754 F. Supp. 3d 705 (S.D.N.Y. 2024). Here, Johnson was granted compassionate release after serving 28 years of a five-life sentence. Mr. Johnson was 32 at the time he committed the crimes, and was age 61 at the time of his release. Mr. Johnson had completed over 100 programs, and had multiple letters of support from friends and family for his release.

The second case to consider is United States v. Fisher, 493 F. Supp. 3d 231 (S.D.N.Y. 2020). In this case, Mr. Fisher had served 38 years on a life-plus-55-year sentence, and was held responsible for four murders. Mr. Fisher was 35 at the time the crimes were committed, and he was 73 at the time of his release. The judge in Mr. Fisher's case reduced his sentence to 360 months after finding that Mr. Fisher had rehabilitated himself, and earned his doctorate degree while in prison.

Last, and perhaps the most grisly of the group, is the case of United States v. Underwood, 2021 U.S. Dist. LEXIS 8378 (S.D.N.Y. 2021). In this instance, Mr. Underwood was found to be the leader of a RICO enterprise, and was held responsible for

no fewer than five murders (but likely responsible for many more). Despite this, the judge in Mr. Underwood's case released him after having served 34 years in prison. Mr. Underwood was 33 years old when the crimes in question took place, and he was 67 years old when he was released.

Judge Stein ultimately granted the motion, in part, because she found that Underwood had an "exemplary record over [the] last three decades," he "mentor[ed] [] young men," and "rais[ed] and support[ed] his children and grandchildren from :behind bars." Underwood, 2021 U.S. Dist. LEXIS 8378 at *15.

### 3. Orena Has Already Proven Extraordinary and Compelling Circumstances Exist

Notwithstanding the points Orena has raised thus far, he respectfully requests that this court, in the renewed motion, take judicial notice of the findings of both this Court and this Circuit that Orena has, indeed, satisfied the requirements for finding an extraordinary and compelling reason for a reduction in sentence exist. See, e.g., United States v. Amato, 37 F.4th 58 *4-5 (2d Cir. 2022)("[Orena] relied on his myriad medical conditions" as a basis for extraordinary and compelling reasons, and "[t]he Government conceded that Orena's medical conditions [] met the threshold requirement of an extraordinary and compelling reason"); and United States v. Orena, 145 F.4th 304 *17-18 (2d Cir. 2025)("there are significant changed circumstances from Orena's original sentencing in 1992. Orena has serious health issues and requires assistance to meet even his basic needs. He poses a minimum threat to others.").

To the extent that this Court may require further evidence of his deteriorating health, Orena respectfully requests the Clerk contact the Clinical Director of the FMC Devens Memory Disorder Unit, Dr. Patricia Ruze, for additional documentation, or to come to court for an evidentiary hearing, where she can give her professional opinion regarding Orena's current physical and mental health, what remains of it.

Against this backdrop, Orena now turns to demonstrate how, given his current state, his 18 U.S.C. § 3553(a) factors must reflect that he is not a danger to others.

## V. 18 U.S.C. § 3553(a) Factors

Orena prefaces this section of the motion by respectfully asserting that he believes the 3553(a) factors are flexible, and change over time, just as people do. So while the facts and circumstances surrounding Orena's case in 1992 might have compelled a life sentence, Orena has also had over 30 years to rehabilitate himself. And, as explained below, his health conditions render Orena to be no danger at all.

While not precedent in this Circuit, Orena proffers the reasoned opinion in United States v. Kibble, 992 F.3d 326, 335 (4th Cir. 2021)(Gregory, J. Concur), for the proposition that:

> the compassionate release statute necessarily envisions that the 3553(a) factors may balance differently upon a motion for compassionate release than they did at the initial sentencing.... [And,] [t]he court pointed out that if a district court's original compassionate release analysis could always prove that a sentence reduction would intolerably undermine those factors, the statute would have no meaningful effect.

A Second Chance at 160 (quoting Kibble, 992 F.3d at 335 (internal quotations omitted)).

With this in mind, Orena entreats this Court to "row [its] sentencing boat into these uncharted waters and decide what to do" with Victor Orena. A Second Chance at 141.

As stated supra, the victims that were related to Orena's case were all "ruthless gang members," and any fallout from the Colombo faction war was not directed at the public. To the extent this Court may believe differently, Orena sincerely expresses his remorse for the actions related to the Colombo family's infighting, as he most certainly had no intention to harm innocent men and women, and did not, in the course of his conduct.

Turning to Orena's current physical and mental condition, he requires 24/7 care just to attend to his most basic needs. See Orena, 145 F.4th at *17-18. And Orena is currently housed at the Memory Disorder Unit ("MDU") at FMC Devens. And this facility "offers intensive care to inmates with memory disorders such as Alzheimer's disease," which Orena has. United States v. Stottlar, 763 F. Supp. 3d 170, 177

(D.N.H. 2025). And the MDU at Devens is the first and only facility within the BOP which was "purpose-built [] for incarcerated people with Alzheimer's disease and other forms of dementia." Katie Engelhart, I've Reported on Dementia for Years, and One Image of a Prisoner Keeps Haunting Me. New York Times, August 11, 2023.

In the MDU, "90% of the men [they] oversee[] don't know what they did and [s]ome of them don't even know where they are." A Second Chance at 166 (quoting Id.). This includes Orena, which is, incidentally, the prisoner in Mrs. Engelhart's article that keeps haunting her. For when Mrs. Engelhart met Orena at the DMU, she reported "that Orena thought he was the warden and would tell the prison staff, 'I'm the Boss. I'm going to fire you." A Second Chance at 166 (quoting id.).

Mrs. Engelhart went on to explain that any dangers a MDU inmate could pose to the public were non-existent:

> As for the need to protect the public from dangerous criminals, she noted that the men in the [MDU] are very sick and confused and use wheelchairs or walkers, and they probably couldn't hurt anyone if they wanted to; moreover, researchers have found that recidivism rates drop to nearly zero for people over 65.

A Second Chance at 167 (quoting id. (internal quotations omitted)).

What is particularly damming to the proposition that Orena could now pose any risk to the public is the portion of Mrs. Engelhart's interview with Dr. Patricia Ruze, the Clinical Director of the MDU. Poingantly, Dr. Ruze stated, in effect:

> I do not believe that the men in the [MDU] pose[] a threat to anyone. I think it would be totally appropriate to release the whole unit on compassionate grounds and relocate the men to community nursing homes, which already have experience dealing with ... cognitive impairment---and which cost much less than operating a prison unit.

A Second Chance at 167 (quoting id. (cleaned up; internal quotations omitted)).

Towards the end of this chapter of Judge Block's book, he states that he "agreed with [Dr.] Ruze's conclusion: 'In this country, we incarcerate way too many people for way too long. We give people life sentences. And then they turn 90, they're in diapers, [then] they get demented. We have to ask ourselves: what are we accomplishing?" A Second Chance at 167-68 (quoting id.)

While it is true that Judge Block was writing about the reasons why he denied compassionate release for another gangster---Vittorio Amuso---there are many similarities. First, Amuso is currently 89 years old, and Orena is 91. And both Amuso and Orena have many health problems. But Orena points out the scale-tipping difference as to why he did not release Amuso, but would have potentially released Orena were he his judge, in the final paragraph of the chapter by writing:

> After I finished reading Engelhart's profound article, as well as a good part of [Ben] Austen's book [see infra], I wondered again whether I should have let Amuso out. Engelhart made a lot of good points and sensitized me to the complexities of managing an aging prison population and the lack of justifications for keeping demented old criminals in prison.... I reasoned, however, that Amuso, unlike Orena, was not demented and still belonged behind bars.

A Second Chance at 168.

It is beyond question that for defendants that are above the age of 65, there is almost no statistical chance of reoffending. This is especially true for the likes of Orena, who thinks he's the warden and can't remember the names of his fellow inmates.

Orena, in addition to the above, is completely blind, incontinent, and cannot get around with the assistance of an Inmate Companion and a wheelchair. At the age of 91, all Orena now asks for is to be released to the care of his younger brother, Paul Orena, at 20292 Ocean Key Drive, Boca Raton, Florida, 33498.[6] And Paul Orena, in conjunction with Victor's granddaughter, Vivian Herod, will ensure that Orena receives the round-the-clock care required, such as registered nurses, and other specialists that can make house visits and work in shifts. This information is currently on file with Mr. Orena's Case Manager, and is a part of his verified Release Plan, which this Court can verify should it grant the motion.

---
[6] Mr. Orena may be reached at (516)-902-9192, in the event that this Court chooses to independently verify this Release with Paul Orena or Vivian Herod.

## VI. Conclusion

For the reasons stated above, Orena respectfully requests that this court reduce his sentence to time served, with the proviso that this Court stay the Order for 14 days, in order to provide the BOP and the United States Probation Office sufficient time to ensure a smooth transition to his Florida home. And in the event this Court should require more information prior to ruling on the motion, Orena respectfully requests that this court hold an evidentiary hearing on the matter. And were this court to grant such a hearing, Orena's family will ensure that he has counsel available to advocate on Orena's behalf.

Respectfully submitted/* by Victor J. Orena on this 5 day of January, 2026:

                                                        Victor J. Orena, pro se
                                                       Reg. No.: _____
                                                       Federal Medical Center
                                                       42 Patton Road
                                                       Ayer, MA 01432

## CERTIFICATE OF SERVICE

This motion was presented to the prison mailing authorities on the same day as signed, and placed inside a postage-prepaid, properly addressed envelope. The original motion was delivered via United States First Class Mail to the United States District Court for the Eastern District of New York, Brooklyn Division, Office of the Clerk at 225 Cadman Plaza, East, Brooklyn, New York, 11201. A copy of this motion was delivered via United States First Class Mail to counsel for the United States at 271A Cadman Plaza East, Brooklyn, New York, 11201.

                                                       Victor J. Orena

## VERIFICATION

Under penalty of perjury pursuant to 28 U.S.C. § 1746, I hereby declare that the factual allegations and factual statements contained in this motion are true and correct to the best of my knowledge.

                                                       Victor J. Orena

---

*/ Pursuant to Johnson v. Avery, 393 U.S. 483 (1969), I received assistance from a fellow inmate with the preparation and filing of this motion.



FROM:

Donald Green, #39747-019
Federal Correctional Complex
Unit A-1 (Low Custody)
P.O. Box 1031
Coleman, FL 33521-1031

TO:

United States District Court
Office of the Clerk
225 Cadman Plaza E
Brooklyn, NY
11201

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ JAN 13 2026 ★
BROOKLYN OFFICE

**PRIORITY MAIL**

US POSTAGE PAID
$0.00
Origin: 33521
01/06/26
1117550512-09

PRIORITY MAIL®

0 Lb 3.60 Oz
RDC 03

EXPECTED DELIVERY DAY: 01/10/26
C030

SHIP TO:
225 CADMAN PLZ E
BROOKLYN NY 11201-1832

USPS TRACKING #
9505 5126 3316 6006 6960 50

To schedule free Package Pickup, scan the QR code.
USPS.COM/PICKUP

EP14F October 2023



**FLAT RATE ENVELOPE**
ONE RATE ■ ANY WEIGHT

To schedule free Package Pickup,
scan the QR code.



USPS.COM/PICKUP

**TRACKED ■ INSURED**


PS00001000014

EP14F October 2023

**VISIT US AT USPS.COM®**